**EXHIBIT 1**

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**RICHARD YUENGLING** and
**REBECCA YUENGLING,**
individually and as parent
guardians of their minor children,
**H.Y** and **P.Y.,**

Case No. 8:22-cv-01787-MSS-SPF

Plaintiffs,

vs.

**PASCO COUNTY SCHOOL BOARD,**
**KURT S. BROWNING, RAY GADD,**
**CARIN HETZLER-NETTLES,**
**KELSEY MORRISON, LINDA KROPIK,**
**RACHEL FLOYD, ERIC SELTZER,**
**CHRIS JOYAL, STACEY JENKINS,** and
**PATRICK MARSHELLO,**

Defendants.
_______________________________________/

**SECOND AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, ATTORNEY'S FEES, AND DEMAND FOR JURY TRIAL**

COME NOW, Plaintiffs, RICHARD YUENGLING and REBECCA YUENGLING, individually and as parent guardians of their minor children, H.Y and P.Y., and file this Amended Complaint against the Defendants, PASCO COUNTY SCHOOL BOARD, KURT S. BROWNING, RAY GADD, CARIN HETZLER-NETTLES, KELSEY MORRISON, LINDA KROPIK, RACHEL FLOYD, ERIC SELTZER, CHRIS JOYAL, STACEY JENKINS, and PATRICK MARSHELLO

(together "Defendants") and state as follows:

1. This lawsuit arises from the coercion and coordinated retaliation directed against Rebecca Yuengling and her husband Richard Yuengling by officials of the PASCO COUNTY SCHOOL BOARD and the PASCO COUNTY SHERIFF'S OFFICE. That retaliation, including the expulsion/banning of their two minor children, plaintiffs H.Y. and P.Y., from their local public school and the constructive termination of Richard Yuengling from his job with the Sheriff's Office arose in response to protected speech by Rebecca Yuengling and Richard Yuengling, and from H.Y.'s protected right not to speak. As a result of exercising his right to free speech, RICHARD YUENGLING also became a target of retaliation, resulting ultimately in his constructive termination from his twenty-two year career as a Sherriff's Deputy.

**Venue**

2. The actions complained of arose in Pasco County, Florida within the Middle District of Florida.

3. All plaintiffs, and, on information and belief, all defendants, reside in Pasco County, Florida.

**Jurisdiction**

4. Jurisdiction over the Plaintiff's claims arises under *42 U.S.C. § 1983* and is vested in this court by *28 U.S.C. §§ 1331* and *1343*, as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## Parties

**Plaintiffs:**

5. REBECCA YUENGLING is the mother of the minor plaintiffs herein and the wife of RICHARD YUENGLING.

6. RICHARD YUENGLING, is the husband of REBECCA YUENGLING, and is the father of the minor plaintiffs herein. At all times relevant to this complaint, he was employed as a Sheriff's Deputy in the Pasco County Sheriff's Department.

7. H.Y. and P.Y. are the minor children of RICHARD YUENGLING and REBECCA YUENGLING, and are students in the Pasco County School System.

**Defendants:**

8. Defendant PASCO COUNTY SCHOOL BOARD (the "School Board") is the school board for Pasco County, Florida.

9. Defendant KURT S. BROWNING has, at the times relevant to this complaint, been the Superintendent of Schools and employee of the Pasco County School District. At all relevant times, he was acting under color of state law.

10. Defendant RAY GADD, is the Deputy Superintendent and second highest official in the Pasco County Schools responsible for assisting the Superintendent with the formation and execution of overall strategy for the

District. At all relevant times, he was acting under color of state law.

11. Defendant CARIN HETZLER-NETTLES was at all relevant times to this complaint the Principal of Cypress Creek High School (the "High School") within the Pasco County School District. At all relevant times she was acting under color of state law.

12. Defendant KELSEY MORRISON was at all times relevant to this complaint a Biology teacher who taught H.Y. during the first semester of H.Y.'s first year of high school. At all relevant times she was acting under color of state law.

13. Defendant RACHEL FLOYD was at all relevant times a history teacher who taught H.Y. during the first semester of H.Y.'s first year of high school. At all relevant times she was acting under color of state law.

14. Defendant LINDA KROPIK was at all relevant times a math teacher who taught H.Y. during the first semester of H.Y.'s first year of high school. At all relevant times she was acting under color of state law.

15. Defendant ERIC SELTZER is an employee of the Pasco County Sheriff's Office in the grade of Captain, under the supervision of the County Sheriff, Defendant CHRIS NOCCO, and was responsible for the supervision and evaluation of RICHARD YUENGLING. At all relevant times he was acting under color of state law.

16. Defendant CHRIS JOYAL is an employee of the Pasco County Sheriff's Office in the grade of Lieutenant, and was responsible for the supervision and evaluation of RICHARD YUENGLING. At all relevant times he was acting under color of state law.

17. Defendant STACEY JENKINS is an employee of the Pasco County Sheriff's Office in the grade of Major, and was responsible for the supervision and evaluation of RICHARD YUENGLING. At all relevant times she was acting under color of state law.

18. Defendant PATRICK MARSHELLO was at all relevant times an employee of the Pasco County Sheriff's Office in the grade of Sargent, and was responsible for the supervision and evaluation of RICHARD YUENGLING during such time as RICHARD YUENGLING worked at the Land O Lakes Jail. At all relevant times he was acting under color of state law.

## Factual Allegations

### The Personal Information Forms - General Allegations

19. In the 2021-2022 school year, H.Y. was a ninth-grade student beginning her first year at the High School.

20. During the first week of school, several of H.Y.'s teacher administered to students forms seeking students' personal information ("Personal Information Forms"). Completion of these Personal Information Forms was mandatory, and in at least one case, students were informed they

would receive a grade based on whether they completed and turned in the Personal Information Forms. These Personal Information Forms required students to identify their "gender identity" and "preferred pronouns," and the content of the forms suggested that, if the student so indicated, such identity and pronouns would be kept confidential from their parents.

21. Completing these Personal Information Forms required H.Y. to engage in an exercise that was antithetical to H.Y.'s values and beliefs about sex and privacy. The Personal Information Forms could not be completed without participating in implicit, government-imposed orthodoxies concerning sex and gender.

22. The Personal Information Forms were assigned to H.Y. in her Math, History and Biology class, but served no pedagogical purpose.

23. There was no compelling state interest in mandating students to provide teachers the information requested on the Personal Information Forms.

24. Distributing the Personal Information Forms to students was a violation of the Parents Bill of Rights, Section 1014.04 (3), Florida Statutes and Pasco County School Board Policy 2416.

25. District officials have subsequently acknowledged that these surveys were improper, and Plaintiffs have been advised that current District policy forbids distributing such surveys to students.

26. However, at the time the Personal Information Forms were distributed to the students in H.Y.'s classes, District custom and policy allowed for the distribution of surveys, questionnaires, information forms, and/or information requests similar to those contained in the Personal Information Forms. This is evidenced by multiple incidents in which such materials have been used in District schools.

**The Personal Information Forms - Specific Allegations**

27. On August 10, 2021, Biology teacher KELSEY MORRISON distributed a Personal Information Form with gender identity questions to the students in H.Y.'s class. MORRISON gave every indication the assignment was mandatory, and H.Y felt required to fill it out, answering every question despite the fact that doing so went against her conscience. MORRISON never indicated the Personal Information Form was voluntary.

28. On August 11, 2021, Math teacher LINDA KROPIK directed H.Y.'s class to fill out the Personal Information Form, which was mandatory.

29. H.Y. told KROPIK she wanted to show her parents the form before she filled it out. KROPIK instructed H.Y. to instead fill out only half of the survey, including whether Kropik should conceal preferred names from H.Y.'s parents. H.Y. understood that the Personal Information Form provided to her by Kropik was mandatory and believed she would be in trouble with the teacher if she declined to fill out half of the form as instructed. Kropic never indicated

that completion of the Personal Information Form was voluntary.

30. The next day, on August 13, 2021, H.Y.'s History teacher, RACHEL FLOYD, gave H.Y. another Personal Information Form, this time as a mandatory, graded quiz. It required H.Y. to designate her gender identity and preferred pronouns. Upset, H.Y. responded by leaving class.

31. Around this time, Rebecca Yuengling complained to an assistant principal at the High School about the Personal Information Forms. Initially, the assistant principal informed Ms. Yuengling that he agreed the Personal Information Forms were inappropriate, and that their distribution to students would be stopped.

32. However, the following day, during a phone call with Ms. Yuengling, the assistant principal informed Ms. Yuengling that the High School's Principal, Defendant Carin Hetzler-Nettles, had "deemed the surveys appropriate" and that no steps would be taken to stop the practice.

33. Ms. Yuengling persisted with her complaints, taking them to School District officials and the School Board, and was ultimately told—at a meeting with Principal Hetzler-Nettles—that the Personal Information Forms would no longer be used at the High School.

34. As a result of the events surrounding the Personal Information Forms, Principal Hetzler-Nettles appeared to dislike Ms. Yuengling and to feel animus toward her. Principal Hetzler-Nettles was regularly abrupt, irritable,

and curt when she spoke and interacted with Ms. Yuengling.

**Rebecca Yuengling's Subsequent Speech Concerning the High School and the District**

35. Ms. Yuengling was concerned about the environment at the High School under Principal Hetzler-Nettles leaders, because since she had become principal in 2018:

a. Former Assistant Principal Kyle Rizma was arrested in 2018 for sexually abusing a minor, for which he is now serving a 35-year prison sentence;

b. Another former teacher at the High School resigned and was arrested for offering a student at the High School $500 in exchange for sex;

c. Rumors were circulating that in 2022, another former staff member had resigned after having engaged in a romantic relationship with a student.

36. This history, in part, was the reason Ms. Yuengling had been deeply troubled by the distribution of the Personal Information Forms. The content of the Personal Information Forms suggested that certain staff at the school considered it appropriate for their relationships with students to include maintaining secret information that was not to be disclosed to parents.

37. In addition, after the incident regarding the Personal Information Forms, certain staff members at the High School began to treat H.Y. unfairly and in a discriminatory fashion.

38. The result was that between August 2021 and January 2022, Rebecca Yuengling, and in some cases Richard Yuengling and H.Y., participated in a series of phone calls, emails, and meetings involving, various members of the High School staff related to Ms. Yuengling's efforts to ensure that H.Y. was treated fairly at school and was safe while on campus.

39. During this time, Ms. Yuengling was also actively engaged in protected First Amendment speech regarding Pasco County School District (the "School District") affairs, speaking at School Board meetings, submitting several public records requests to the School District, and taking an active role in an informal organization named Pasco Watch, the mission of which was civic engagement with public education in Pasco County. In her role with Pasco Watch, Ms. Yuengling regularly posted on social media regarding School District affairs and affairs at the High School.

40. In some cases, Ms. Yuengling's speech concerning the District and the High School was critical.

41. Among the communications Rebecca Yuengling sent to the District in the August 2021-January 2022 time period was an email she wrote to the Deputy Superintendent for Middle Schools. In that email, Ms. Yuengling

expressed her concerns about the environment at the High School, stating that she believed there were victims of sexual abuse at the school who were still unknown to the administration, and insisting that she would advocate for victims who had been sexually abused at the High School. Included in the email was a reference to disturbing evidence that had emerged in the criminal proceeding concerning the High School's now-imprisoned former Assistant Principal, Kyle Rizma. *See supra*.

42. At some point, this email was forwarded to Defendant, Deputy Superintendent, Ray Gadd. Deputy Superintendent Gadd was apparently enraged by Ms. Yuengling's email, and, in a seeming attempt to shame and embarrass Ms. Yuengling, he read the email (out of context) at the next School Board meeting on December 14, 2021. That meeting was just over one month prior to H.Y.'s expulsion.

43. After reading the email, Mr. Gadd stated:

> "This is from a parent in this room, Rebecca Yuengling… I don't know what you call it; I don't know if you call it racism[1]; I don't know if you call it mean-spiritedness. . . but today its enough for me. A long time ago I had a mentor named John Long, and I was mad at a staff member because they'd done something stupid and it wasn't the first time they'd done something stupid, they'd done something stupid many times. And I went into the office and I said "when is enough

[1] Deputy Superintendent Gadd's apparent suggestion that Ms. Yuengling was a racist was baseless and defamatory. Ms. Yuengling's email made no reference to race or any race-related issue, either directly or by implication, nor had Ms. Yuengling previously done anything to suggest that any of her attitudes toward, or engagement with, the High School or the School District were motivated by racism.

enough?" and John Long looked at me and said "Today". And today is enough for me.

44. Mr. Gadd characterized Ms. Yuengling's email as abusive and concluded by saying that "I am not going to continue to allow" it anymore. Mr. Gadd did not explain what he meant by his assertions that "today is enough for me" and that he was "not going to allow" it anymore.

45. It is extremely unlikely that Deputy Superintendent Gadd would have publicly named, verbally attacked, and sought to shame Ms. Yuengling without the consent of his supervisor, Defendant Superintendent Browning.

46. Ms. Yuengling sent an email the day following the meeting to Defendant, District Superintendent Browning, complaining about Mr. Gadd's actions at the Board meeting. Deputy Superintendent Gadd obtained the email and forwarded it to Jeff Harrington, Chief Deputy of the Pasco County Sherriff's Department, requesting the Sheriff's Department open an investigation into Ms. Yuengling. **(Exhibit I)** Gadd wrote another email to Chief Deputy Harrington two days later, on December 17, 2022, this time suggesting the Department of Homeland Security be involved to conduct an investigation. **(Exhibit I)**

47. It is evident from these events that Deputy Superintendent Gadd held animus toward Rebecca Yuengling and wished to see her punished.

**Richard Yuengling's Speech Concerning the District in the August 2021-January 2022 Period**

48. Like his wife, Richard Yuengling was a member of Pasco Watch

during the period from August 2021 through January 2022. In that role, community members regularly solicited his opinion about the Personal Information Forms and other matters concerning the School District and the High School. Mr. Yuengling would share his views on these matters, which in some cases expressed concerns or criticisms about the School District and the High School.

49. Likewise, Mr. Yuengling's involvement in Pasco Watch, his views on the Personal Information Forms, and his concerns about the District and the High School were well known among his Sherriff's Department colleagues at the West Pasco Judicial Center, where Mr. Yuengling worked at the time as a Bailiff. This was as a result of conversations Mr. Yuengling had had with his colleagues (which conversation were held in appropriate circumstances).

50. Additionally, Mr. Yuengling accompanied his wife on multiple occasions to School Board meetings in order to show his support of her and the public comments she made at such meetings.

**The Retaliatory Expulsion of H.Y.**

51. H.Y. was expelled from the High School on January 21, 2022.

52. On that day, Defendant Browning, Superintendent of the Pasco County Schools, sent a letter by email, on official Pasco County Schools letterhead, to Rebecca Yuengling, informing her that because of her emails, phone calls, public statements and posts on social media, H.Y. was being

removed from the High School, effective January 26, 2022. This letter is attached hereto. **(Exhibit A)**

53. In that letter, Superintendent Browning also determined that the Yuengling's youngest child, P.Y., was banned from entering the High School (for which he was zoned) upon graduation from 8th grade (he was in 7th grade at the time). **(Exhibit A)**

54. These determinations were purportedly made on Superintendent Browning's exclusive authority based on School Board Policy 5120, which provided that:

> The Superintendent may assign or reassign students on a case-by-case basis. . . to prevent disruption of the educational environment.

55. The content of the letter strongly suggests a personal animus existed on the part of Superintendent Browning toward Ms. Yuengling and that this animus had motivated his decision.

56. As one example, Superintendent Browning suggested that Ms. Yuengling had sent "voluminous emails [to the High School] (in excess of 500 pages)". However, this was a gross exaggeration. The 500-page figure cited by the Superintendent included attachments that comprised a large portion of the overall page number. It also included emails that went to School District administrators that did not work at the High School, and, consequently, such emails could not have been "disruptive to the learning environment" at the High

School, as is required by Board Policy 5120 as a basis for reassignment.

57. As another example, Superintendent Browning asserted that three High School employees "have sought circuit court injunctions against you." However, during the temporary injunction hearing held in this matter on August 8, 2022, Superintendent Browning admitted in his testimony that he had never personally confirmed whether such petitions for injunction were ever filed or even actually existed. [Trans. 106:15 -107:10]

58. In fact, Superintendent Browning's letter consisted almost entirely of accusations against Ms. Yuengling and did not reference any actual incidences of students whose learning had been harmed in any way by anything Ms. Yuengling had done.

59. Only ten days prior to Superintendent Browning sending the letter (on or about January 12th, 2022), Superintendent Browning took a meeting with Deputy-Superintendent Gadd and Principal Hetzler-Nettles, who, as explained above, themselves both harbored a personal animus against Ms. Yuengling. Ms. Yuengling was the topic of the meeting. Shortly before to the meeting, Principal Hetzler-Nettles made a public records request for all email communications Ms. Yuengling had had with the School District, presumably because Principal Hetzler-Nettles believed the purpose of the forthcoming meeting with Gadd and Browning was to develop a record to justify H.Y.'s expulsion.

60. On the evening of January 21, 2022, Plaintiff Richard Yuengling lodged a formal appeal of Superintendent Browning's decision and requested school officials stay enforcement. The appeal request was emailed to Superintendent Browning and the following School Board members: Megan Harding, Allen Altman, Cynthia Armstrong, Colleen Beaudoin, and Allison Crumbley. **(Exhibit C)**

61. On January 24, 2022, Richard Yuenling received a response email from Superintendent Browning stating that his decision to remove Mr. Yuengling's daughter H.Y. to an out of zone school was "non-appealable."[2] See

[2] In fact, an appellate process should have been made available to the Yuengling's under the Pasco County Student Code of Conduct for the 2021-2022 School Year ("Code of Conduct"). It included an Appeal Process and Appeal Rights for "reassigned" students and their parents, stating:

> "Students that are subject to an assignment or re-assignment as the result of this process, and who disagree with the assignment or re-assignment will be afforded due process and have the right to request a hearing in front of an Independent Hearing Officer (IHO)."

**(Exhibit B)** Further, such appeal was to stay the "reassignment" pending its outcome. According to the Code of Conduct:

> "The student will return to school (OSS) resume normal class attendance (ISS) or resume bus transportation pending the school level appeal"

The Pasco County Student Code of Conduct for the 2022-2023 school year has removed these appellate rights. The version of School Board Policy 5120 (according to which the "reassignment" of H.Y. and barring of P.Y. from the High School was purportedly made) also contained no appellate remedy. However, the currently applicable version of School Board Policy 5120 provides that "[t]he Superintendent shall develop procedures that ensure that appropriate due process is provided any student reassigned pursuant to this provision." The Yuenglings have not been notified of any appellate process that has been developed and is

attached. **(Exhibit D)**

62. On the same day, January 24, 2022, Richard Yuengling also received an email from Pasco County School Board Member Megan Harding, again informing him that the decision was "not appealable," which was false, misleading and a failure to follow the School Board's own policies and procedures, including the appeal process outlined in the Student Code of Conduct. **(Exhibit E)**

63. Other than the two emails noted above, neither Yuengling parent received any further information about the status of or rights to an appeal.

64. H.Y. attempted to attend school on January 26, 2022. She was escorted off the bus by school officials and taken to a conspicuous place outside of the school gates, where she was forced to wait for her mother to remove her from the vicinity of the school. Instead of taking her by the most direct route from the bus to the location where her mother was to pick her up (or simply being allowed to wait inside for her mother to arrive) H.Y. was paraded, in what amounted to a humiliating "perp walk," witnessed by (and video recorded by) many members of the student body, including many of her friends. H.Y., then

---

available to them.

Nevertheless, H.Y. is currently attending the High School pursuant to an agreement reached by the parties pursuant to mediation in this proceeding. [Dkt. 28]

fourteen years old, was crying and was visibly upset throughout this process.

65. The discrimination faced by H.Y. from some staff members at the High School; her "reassignment" to another District school; the banning of P.Y. from the High School; the humiliating treatment experienced by H.Y. on January 26, 2022; and Deputy Superintendent Gadd's attempt to humiliate Ms. Yuengling at the School Board meeting were all in retaliation for Rebecca Yuengling's protected speech concerning the District and the High School.

**The Retaliatory Constructive Termination of Richard Yuengling**

66. Having been notified by Superintendent Browning and the School Board that no appellate rights were available to challenge School Policy 5120 and its capricious application by Superintendent Browning, Mr. Yuengling prepared a court filing, styled as an Emergency Motion and Complaint, to serve in place of the appeal.

67. The named defendants included Superintendent Browning and the School Board.

68. On January 25, 2022, Mr. Yuengling filed an Emergency Motion and Complaint in Pasco County Court, filing the papers with the clerk while he was on an authorized break from work. **(Exhibit F)** The motion was denied by the duty Judge, who ruled that it did not qualify as an emergency.

69. On January 31st, 2022, after completing work for the day, but before leaving the courthouse, Mr. Yuengling filed a revised form of the previous filing,

this time styled as an Amended Motion Requesting an Expedited Hearing for Injunctive Relief (the "Amended Motion"). **(Exhibit G)**

70. Prior to filing, Mr. Yuengling had spoken with parents of students at the High School and other District schools who were concerned that their own children would be "reassigned" out of their current school by Superintendent Browning under School Board Policy 5120. In fact, at a School Board Meeting on February 1, 2022, a host of parents addressed the School Board, expressing their concerns about School Board Policy 5120 and its lack of due process protections to prevent arbitrary reassignment of students. According to the parents with whom Mr. Yuengling spoke, these parents were worried that if they advocated on behalf of their children to the School District, School Board Policy 5120 allowed for retaliation against their children through expulsion and reassignment.

71. Thus, both of Mr. Yuengling's filings identified School Board Policy 5120 as the document on which Superintendent's determination had been based, sought injunctive relief to prevent ongoing violations of the Fourteenth and First Amendments to the United States Constitution and to halt the application of Board Policy 5120, and indicated on multiple occasions that the injunctive relief would prevent harm to both plaintiff's daughter and the public at large. Mr. Yuengling would have requested declaratory relief, asking for Board Policy 5120 to be declared illegal in its then-current form, but Mr. Yuengling was proceeding

*pro se* and did not have the legal expertise to know this was something he should ask for.

72. Since RICHARD YUENGLING always changed his clothes after returning home from work, he was still in uniform when he filed the papers with the clerk on January 25, 2022, and on January 31, 2022.

73. At approximately 4 pm, on January 31, 2022, after having filed his amended motion but prior to its service, Mr. Yuengling spoke with his supervisor, Defendant Eric Seltzer, a Captain with the Pasco County Sherriff's Department and the commanding Sherriff's Deputy at the West Pasco Judicial Center.

74. Mr. Yuengling notified Captain Seltzer that he was preparing to submit his filing to a process server. Mr. Yuengling told Captain Seltzer this because he had previously informed Captain Seltzer of his intention to bring a claim against the School Board and Superintendent Browning, and Captain Seltzer had instructed him that, since Captain Seltzer was Mr. Yuengling's commanding officer, Mr. Yuengling should keep him (Captain Seltzer) informed on the matter as it progressed.

75. At the time Mr. Yuengling told Captain Seltzer that he was preparing to serve his complaint, Captain Seltzer was standing in the lobby of the courthouse speaking with a government attorney. The attorney, overhearing the exchange between Mr. Yuengling and Captain Seltzer, advised Mr.

Yuengling that Superintendent Browning was a person Mr. Yuengling "shouldn't mess with" because he was very connected and was a former Secretary of State under former Governor Charlie Christ. Captain Seltzer concurred with this statement and indicated that Mr. Yuengling's lawsuit, if filed, would reflect poorly on the Sherriff's Department. Then, both the attorney and Captain Seltzer urged Mr. Yuengling to abandon his lawsuit and focus instead on trying to get his kids into a local charter school.

76. Mr. Yuengling decided to go forward with providing his claim to the process server for service regardless.

77. Unbeknownst to Mr. Yuengling at the time, Captain Seltzer filed an internal affairs complaint against Mr. Yuengling later that same day. The basis of the complaint was that Mr. Yuengling had been conducting personal business while in uniform. While speaking in the courthouse lobby that day, Captain Seltzer had made no reference to any concern about Mr. Yuengling filing his case or delivering his submission to the process server while in uniform.

78. The School Board was served with the Emergency Motion and Complaint the following day, February 1, 2022. Shortly thereafter, in the late afternoon of the same day, Mr. Yuengling was summoned to a meeting with Captain Seltzer. When he arrived, Captain Seltzer was accompanied by Defendant, Lieutenant Chris Joyal.

79. Captain Seltzer advised Richard Yuengling that effective February 2, 2022, (the following day) Mr. Yuengling would be transferred to jail duty for an indefinite period of time. In this context, "jail duty" was a reference to the Land O Lakes Jail (the "Jail") which, at that time, was staffed by the Pasco County Sherriff's Department.

80. Such reassignment would have been broadly perceived as undesirable among Sherriff's Deputies, and this was particularly the case for Mr. Yuengling, because he had worked as a Bailiff at the courthouse for 14 years and because the Jail was located far from his home and children's schools.

81. Mr. Yuengling was shocked and asked Captain Seltzer the reason for the transfer. Captain Seltzer would not provide him an answer, telling him only that "[y]ou are a smart person and you'll figure it out."

82. In his 14 years working at the courthouse, Mr. Yuengling had always enjoyed an excellent reputation and a good working relationship with the various judges and court personnel. His annual evaluations had been excellent during the twenty-two years that he had been employed as a deputy by the Pasco County Sheriff. He had never been the subject of any complaints, and he was one of the most senior bailiffs assigned to the court.

83. Lieutenant Joyal attended this meeting in his status as a supervising officer over Mr. Yuengling. He indicated his approval of Captain Seltzer's determination, did not voice any objection to Captain Seltzer's determination,

and did not provide Mr. Yuengling any substantive response to Mr. Yuengling's request for an explanation for the reassignment.

84. Despite Captain Seltzer's representation to Mr. Yuengling that no determination had been made concerning the length of his transfer to the Jail, in the following days, Mr. Yuengling had multiple communications with colleagues at the courthouse in which they indicated they had received information that Mr. Yuengling had been permanently transferred to the jail. (*See, e.g.* **Exhibit J**)

85. After this, Mr. Yuengling became fearful that he would lose his job, and, on February 4, 2022, he filed a voluntary discontinuance of his legal claim.

86. Mr. Yuengling reported to work at the Jail the day after his reassignment by Captain Seltzer and Lieutenant Joyal.

87. Mr. Yuengling's assignments at the Jail were determined by his supervising officer, Defendant, Sergeant Patrick Marshello. Within several weeks of Mr. Yuengling's arrival at the Jail, Sergeant Marshello began assigning Mr. Yuengling to work in the Administration Segregation Pod every day.

88. This pod, referred to by Jail staff as "Ad-Seg", is commonly known as "solitary confinement." This pod housed many of the Jail's most violent inmates and inmates with a history of violence toward Jail staff. As a result, it was considered by staff to be the least desirable assignment in the Jail.

89. Mr. Yuengling was confused by the fact that Sergeant Marshello was assigning him to the "Ad-Seg" Pod every day and asked Sergeant Marshello when he could expect to start receiving different assignments. Sergeant Marshello told Mr. Yuengling that he could expect to remain assigned to "Ad-Seg" until October 2022 (over eight months away) so that he could "familiarize himself with the Jail."

90. This answer also confused Mr. Yuengling because (1) he was already familiar with work at the Jail because he had done substantial voluntary overtime there while the Jail was short-staffed during the Covid pandemic and because (2) in order to familiarize himself with work at the Jail, it seemed he would need to work in various units as opposed to just one.

91. Mr. Yuengling's daily assignment to the "Ad-Seg" Pod was noted by his colleagues, and other Sherriff's Deputies working at the Jail often asked Mr. Yuengling who he had "piss[ed] off to be assigned there every day." In fact, these circumstances were viewed by other Sheriff's Deputies as so unusual that word of Mr. Yuengling's daily assignment to the "Ad-Seg" Pod got back to Mr. Yuengling's former colleagues, the Sherriff's Deputies working at the West Pasco Justice Center.

92. On February 21, 2022, Mr. Yuengling was formally notified (and first learned of), the Internal Affairs investigation Captain Seltzer had initiated

again him[3]. The purported violation on which the investigation was based was that Mr. Yuengling had done personal business while in uniform.

93. The notice of the investigation on February 21, 2022, was in violation of Mr. Yuengling's statutory rights because it was provided nearly three weeks *after* the corresponding disciplinary action that had been taken against him by Captain Seltzer (*i.e.* the reassignment to the Jail). *See* § 112.532(4)(a), Fla. Stat., which section concerns "[l]aw enforcement officers' and correctional officers' rights."

94. The accusation that Mr. Yuengling had violated the rule against wearing his uniform while doing personal business was a pretext to create the appearance of legitimacy for the retaliation being directed at Mr. Yuengling. It was commonplace for Sherriff's Deputies working at the West Pasco Justice Center to wear their uniforms while conducting personal business and yet receive no discipline. Examples included Sherriff's Deputies that wore their uniform while appearing as a party in family court, disputing traffic tickets, testifying in their own divorce proceedings, shopping for major purchases such as automobiles, handling banking transactions, and doing various errands. There were also voluminous instances of Sherriff's Deputies conducting personal transactions with the county clerk while in uniform (the exact thing that Mr. Yuengling had done) without repercussion.

[3] Report numbers IA 2022-006 (A) and IA 2022-006 (B)

95. On or about March 15, 2022, Richard Yuengling was summoned to the administration office at the Jail, where Captain Seltzer and Lieutenant Joyal had come to meet him. Captain Seltzer advised Mr. Yuengling that Mr. Yuengling would be receiving a Letter of Reprimand and a Letter of Counseling regarding the results of the Internal Affairs investigation.

96. During that meeting, Captain Seltzer also advised Mr. Yuengling that Mr. Yuengling's transfer to the jail would be permanent. Captain Seltzer insisted the transfer was not a punitive action resulting from Mr. Yuengling's uniform violation.

97. When Mr. Yuengling asked why he was being transferred if not as a punishment, Captain Seltzer answered evasively and non-responsively that it was because of "what happened."

98. Mr. Yuengling informed Captain Seltzer that he intended to appeal the reassignment decision to Defendant, Major Stacy Jenkins, who was Captain Seltzer's immediate supervising officer. Captain Seltzer discouraged Mr. Yuengling from making such appeal. Mr. Yuengling went forward with his appeal to Major Jenkins regardless.

99. Lieutenant Joyal attended the March 15, 2022, meeting at the Jail in his status as one of Mr. Yuengling's supervising officers. He indicated his approval of Captain Seltzer's determinations and explanations, did not voice any objection to Captain Seltzer's determinations or explanations, and did not

provide any substantive response to Mr. Yuengling's request for an explanation as to why he had been permanently reassigned to the Jail.

100. Sometime between March 15, 2022, and March 21, 2022, Mr. Yuengling met with Major Jenkins concerning his appeal. Major Jenkins said she was going to accept Captain Seltzer's determination that Mr. Yuengling should be permanently transferred, but that Mr. Yuengling would be afforded the opportunity to reapply to be a bailiff at the West Pasco Justice Center after six months. However, she went on to warn him that he'd had the opportunity to serve as a bailiff at the West Pasco Justice Center for a long time, and any new positions opening were likely to be given to someone new.

101. Major Jenkins informed Mr. Yuengling that whether he was to be reassigned was ultimately her decision. She did not indicate he had any right to appeal.

102. On March 21, 2022, Mr. Yuengling formally received the Letter of Reprimand and Letter of Counseling for violating General Order 26.1 2 Rules and regulations: A. Neglect of Duty Offenses, Failure to follow general orders and Specifically General Order 22.8 Certified Uniform and Personal Appearance. Neither indicated any appellate rights were available to Mr. Yuengling.

103. Contrary to what Mr. Yuengling had been told by Captain Seltzer, the Letter of Reprimand stated clearly that the reassignment was a punishment:

> You are hereby issued this Letter of Reprimand and the following sanction: reassignment to Security Services and not to be considered for transfer for six months…"

**(Exhibit H)**

104. The letter also contained a notice that Mr. Yuengling should "[b]e advised, any further violations of office policy and procedures may result in more severe discipline, including termination." **(Exhibit H)**. This language struck Mr. Yuengling as particularly ominous, taking into account that he had never before in his career been subject to discipline.

105. Mr. Yuengling was afforded no other opportunity to challenge the actions taken against him, and it was clear to him that further attempts would be futile.

106. On March 25, 2022, just four days after receipt of the letter, Pasco County Sheriff, Chris Nocco, announced that the Pasco County Jail would switch from Sheriff to County oversight, citing financial concerns as the reason for the change. The change was scheduled to, and did, take effect October 1, 2022. As of that date, all Sherriff's Deputies working at the Jail no longer worked for the Sherriff's Department but instead become Corrections Officers working for a County agency.

107. Had Mr. Yuengling continued in his assignment at the county jail, he would have lost his status as a Deputy Sheriff and been reclassified as a Corrections Officer as well as faced other adverse consequences. Mr.

Yuengling's reassignment and the Jail's switch to County oversight, taken together, resulted in the effective termination of Mr. Yuengling's status as a Sherriff's Deputy. It is reasonable to infer that Lieutenant Joyals, Captain Seltzer, and Major Jenkins were aware—at all times relevant to Mr. Yuengling's reassignment— that oversight of the Jail was soon to be transferred to the County.

108. Under the circumstances presented, Mr. Yuengling believed that he was being retaliated against and discriminated against for his and his wife's protected speech and that it was necessary for him to resign, in order to protect himself from the likelihood of additional adverse consequences and unfounded disciplinary complaints that could have placed his pension in jeopardy.

109. On May 10, 2022, believing that his employment was untenable, Richard Yuengling submitted his two-week resignation letter. He requested to keep his gun and badge and to be granted the Pasco County Sherriff Department's "ceremonial benefit." These were important benefits primarily because their withholding would signal to the law enforcement community that Mr. Yuengling's departure from the Sherriff's Department was under a cloud of wrongdoing.

110. Major Jenkins had the authority to grant this request but denied it.

111. Taken together, Mr. Yuengling faced the following acts of retaliation for his and his wife's protected speech: (i) Captain Seltzer initiated an

internal affairs investigation against Mr. Yuengling for activity that typically went unpunished under Captain Seltzer's command at the West Pasco Judicial Center; (ii) Mr. Yuengling was subjected to an internal affairs investigation conducted in violation of the statutorily required process; (iii) Mr. Yuengling was permanently transferred to work at the Jail on February 1, 2022, without cause; (iv) the alleged disciplinary penalty contained in the Letter of Reprimand was disproportionate and out of line with the treatment of other Sherriff's Deputies for similar offenses; (v) Mr. Yuengling was forced to work in the Ad-Seg Pod of the Jail every day; (vi) Mr. Yuengling was constructively terminated from the Sheriff's Department as a result of his permanent transfer to the Jail since the operation of the Jail was soon to be transferred to the County; (vii) Mr. Yuengling was constructively terminated by the pattern of retaliation he experienced which made it clear that continuing in his employment was likely to result in termination and loss of his pension; (viii) Major Jenkins chose to exercise her discretion to refuse to allow Mr. Yuengling, pursuant to his retirement, to keep his gun and badge and to be granted the Pasco County Sherriff Department's "ceremonial benefit."

## COUNT ONE

(42 U.S.C. § 1983) First Amendment Speech: Retaliation for the Protected Speech of Plaintiff REBECCA YUENGLING
(Against Defendants School Board, Browning, Gadd, and Hetzler-Nettles)

112. Plaintiffs hereby incorporate paragraphs 1-111 by reference.

113. REBECCA YUENGLING engaged in protected First Amendment activity when she engaged in the activities described in paragraphs 38-40 above.

114. As a result of these communications, Ms. Yuengling incurred the animus of Principal Hetzler-Netters; Deputy-Superintendent Gadd, and Superintendent Browning.

115. Principal Hetzler-Nettles retaliated against Ms. Yuengling by subjecting H.Y. to a "perp walk" when she was escorted off campus on January 26, 2022; by seeking to have, and assisting in having, H.Y. reassigned to a new school; and seeking to have and assisting in having P.Y. banned from the High School.

116. Deputy Superintendent Gadd retaliated against Ms. Yuengling by "doxing" her and seeking to humiliate and defame her at a public School Board meeting; by attempting to have a baseless criminal investigation opened against her; by seeking to have and assisting in having H.Y. reassigned to a new school; and by seeking to have and assisting in having P.Y. banned from the High School.

117. Superintendent Browning retaliated against Ms. Yuengling by reassigning H.Y. to a new school and banning P.Y from the High School; and by denying meaningful appellate relief to the Yuenglings for these actions.

118. The Pasco County School Board retaliated against Ms. Yuengling by reassigning H.Y. to a new school and banning P.Y from the High School. The final policymaker for this decision was Superintendent Browning because his decision under Board Policy 5120 was not subject to meaningful administrative review.

119. Rebecca Yuengling sustained a clearly established violation of her First Amendment right to free speech through the retaliation of the defendants named herein, which retaliation was against her and the members of her family, resulting in the chilling of her and other parents' exercise of free speech rights.

WHEREFORE, Plaintiff Rebecca Yuengling seeks legal and equitable relief against defendants. Plaintiff seeks injunctive relief against the individual defendants in their official capacity restricting them from repeated further harassment, from draconian punishment and discriminatory actions against the minor children and to prevent compelled speech from the minor children and against all defendants in their personal capacities for monetary damages to include special damages, wrongful act damages, compensatory and punitive relief and for attorney's fees and any further relief this Court deems fair and just.

**COUNT TWO**

(42 U.S.C. § 1983) First Amendment Speech: Retaliation for the Speech of Plaintiffs REBECCA YUENGLING and RICHARD YUENGLING
(Against Defendants Eric Seltzer, Chris Joyal, Stacey Jenkins, and Patrick Marshello)

120. Plaintiffs hereby incorporate paragraphs 1-111 by reference.

121. REBECCA YUENGLING engaged in protected First Amendment activity when she engaged in the activities described at paragraphs 38-40 above.

122. Richard Yuengling engaged in protected First Amendment activity when he engaged in the activities described at paragraphs 48-50 and 66-70 above.

123. Eric Seltzer retaliated against Richard Yuengling for his protected speech and/or the protected speech of Rebecca Yuengling when he engaged in, participated in, or ordered the retaliation described at paragraph 111 items (i), (ii), (iii), (iv), (v), (vi), and (vii), above.

124. Chris Joyal retaliated against Richard Yuengling for his protected speech and/or the protected speech of Rebecca Yuengling when he engaged in, participated in, or ordered the retaliation described at paragraph 111 items (i), (ii), (iii), (iv), (v), (vi), and (vii), above.

125. Stacey Jenkins retaliated against Richard Yuengling for his protected speech and/or the protected speech of Rebecca Yuengling when she engaged in, participated in, or ordered the retaliation described at paragraph 111 items (i), (ii), (iii), (iv), (v), (vi), (vii), and (viii) above.

126. Patrick Marshello retaliated against Richard Yuengling for his protected speech and/or the protected speech of Rebecca Yuengling when he engaged in, participated in, or ordered the retaliation described at paragraph 111 item (v) above.

127. Richard Yuengling and Rebecca Yuengling sustained a clearly established violation of their First Amendment right to free speech through the retaliation of the defendants named herein, which retaliation was against them and the members of their family, resulting in the chilling of their and other parents' exercise of free speech rights.

WHEREFORE, Plaintiffs Rebecca Yuengling and Richard Yuengling seek legal and equitable relief against defendants. Plaintiffs seeks injunctive relief against the individual defendants in their official capacity restricting them from repeated further harassment, from draconian punishment and discriminatory actions against the minor children and to prevent compelled speech from the minor children and against all defendants in their personal capacities for monetary damages to include special damages, wrongful act damages, compensatory and punitive relief and for attorney's fees and any further relief this Court deems fair and just.

## COUNT THREE

(42 U.S.C. § 1983) Violation of H.Y. and P.Y.'s Fourteenth Amendment Procedural Due Process Rights
(Against Defendants School Board and Superintendent Browning)

128. Plaintiffs hereby incorporate paragraphs 1-111 by reference.

129. The reassignment of H.Y. and P.Y. was done in violation of their 14th Amendment Right to Due Process of Law, and in violation of their constitutionally protected rights to property.

130. H.Y. and P.Y. possess a property interest in a public education.

131. The violation of this right occurred when, without a valid basis in law or policy, H.Y. was expelled from the High School and P.Y. was banned from attending the High School without due process of law.

132. The violation of these constitutionally protected rights was undertaken by Superintendent Browning both by making the original determination to reassign H.Y. and ban P.Y. from the High School and also by denying the Yuenglings an opportunity to appeal his decision.

133. Because the Yuenglings had no meaningful right to administrative review, Superintendent Browning was the final policy maker for the School Board for the purposes of those decisions.

134. The violations described in this count were taken in clear violation of H.Y.'s Constitutional Rights

WHEREFORE, Plaintiffs H.Y. and P.Y. seek legal and equitable relief against defendants. Plaintiffs seeks injunctive relief against the individual defendants in their official capacity restricting them from repeated further harassment, from draconian punishment and discriminatory actions them and to prevent compelled speech from the them and against all defendants in their personal capacities for monetary damages to include special damages, wrongful act damages, compensatory and punitive relief and for attorney's fees and any further relief this Court deems fair and just.

## COUNT FOUR

(42 U.S.C. § 1983) Violation of Richard Yuengling's Fourteenth Amendment Procedural Due Process Rights
(Eric Seltzer, Chris Joyal, Stacey Jenkins, and Patrick Marshello)

135. Plaintiffs hereby incorporate paragraphs 1-111 by reference.

136. The constructive termination of Richard Yuengling was done in violation of his 14th Amendment Right to Due Process of Law, and in violation of his constitutionally protected rights to property.

137. Richard Yuengling possessed a property interest in his job as a Deputy with the Pasco County Sherriff's Department.

138. Richard Yuengling was constructively terminated from this position by the pattern of retaliation he experienced which made it clear that continuing in his employment was likely to result in termination.

139. As alleged previously, this pattern of retaliation was undertaken by, variously, Eric Seltzer, Chris Joyal, Stacey Jenkins, and Patrick Marshello in clear violation of Mr. Yuengling's Due Process rights.

140. Richard Yuengling had no meaningful right of administrative review from his constructive termination.

WHEREFORE, Plaintiff Richard Yuengling seeks legal and equitable relief against defendants. Plaintiff seeks injunctive relief against the individual defendants in their official capacity restricting them from repeated further harassment, from draconian punishment and discriminatory actions

against the minor children and to prevent compelled speech from the minor children and against all defendants in their personal capacities for monetary damages to include special damages, wrongful act damages, compensatory and punitive relief and for attorney's fees and any further relief this Court deems fair and just.

**COUNT FIVE**

(42 U.S.C. § 1983) Violation of H.Y.'s First Amendment Right: Compelled Speech
(against the School Board, Carin Hetzler-Nettles, Kelsey Morrison Linda Kropik, and Rachel Floyd)

141. Plaintiffs hereby incorporate paragraphs 1-111 by reference.

142. The First Amendment's freedom of speech requirement includes both the right to speak and the clearly established right not to be compelled by the government to speak something you do not believe.

143. Defendant's Morrison, Kropik, and Floyd required H.Y. to state, in Personal Information Forms, her "gender identity" and "preferred pronouns," an exercise that is antithetical to H.Y.'s values and beliefs about sex and privacy, and that cannot be completed without participating in implicit, government-imposed orthodoxies surrounding sex and gender.

144. The assignments were assigned to H.Y. in Math, History and Biology class, and served no pedagogical purpose.

145. There was no compelling state interest in the graded and mandatory assignments.

146. District custom and policy allowed for the distribution of surveys, questionnaires, information forms, and/or information requests similar to those contained in the Personal Information Forms. The distribution was widespread and pervasive, amounting to a custom.

147. Carin Hetzler-Nettles was the final policymaker for the School District regarding whether the Personal Information Forms could be distributed at the High School and, in this role, she allowed their distribution.

148. Defendants Morrison, Kropik, and Floyd exercised their discretion to distribute the Personal Information Forms to students by mandating their students to complete them, in disregard of H.Y.'s freedom of conscience and clearly established First Amendment law. Defendants Morrison, Kropik, and Floyd were the final policymakers for the District regarding whether the Personal Information Forms were to be mandatorily distributed in their class.

149. H.Y. suffered emotional distress as a result being mandated to participate in completing the Personal Information Forms.

150. The violations described in this count were taken in clear violation of H.Y.'s Constitutional Rights.

WHEREFORE, Plaintiff Richard Yuengling seeks legal and equitable relief against defendants. Plaintiff seeks injunctive relief against the

individual defendants in their official capacity restricting them from repeated further harassment, from draconian punishment and discriminatory actions against the minor children and to prevent compelled speech from the minor children and against all defendants in their personal capacities for monetary damages to include special damages, wrongful act damages, compensatory and punitive relief and for attorney's fees and any further relief this Court deems fair and just.

**JURY TRIAL DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated this ______ day of ________________, 2023.

CH LAW FIRM, PLLC

*/s/ Charles H. Hardage*
Charles H. Hardage
Florida Bar No. 76917
5937 Valentino Way
Lakeland, FL 33812
Phone: (904) 426-7257
hardagelaw@gmail.com
servicehardagelaw@gmail.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk of the Court using the Court's CM/ECF system, and that an email copy was sent to the email addresses below this _____ day of _____________, 2023.

David J. Stefany, Esq.
Florida Bar No. 438995
Matthew D. Stefany, Esq.
Florida Bar No. 98790
Maelyn M. Morrison, Esq.
Florida Bar No. 1018654
ALLEN NORTON & BLUE, P.A.
Hyde Park Plaza – Suite 225
324 South Hyde Park Avenue
Tampa, FL 33606
Ph: (813) 251-1210 | Fax: (813) 253-2006
dstefany@anblaw.com
mstefany@anblaw.com
mmorrison@anblaw.com
mmcadams@anblaw.com
awilliams@anblaw.com

Tammie L. Rattray, Esq.
Florida Bar No. 128619
Emily Chase-Sosnoff, Esq.
Florida Bar No. 1013901
FORD & HARRISON LLP
401 East Jackson Street, Suite 2500
Tampa, FL 33602
Tel.: (813) 261-7800
trattray@fordharrison.com
echase-sosnoff@fordharrison.com

Dennis J. Alfonso, Esq.
Florida Bar No. 843271
MCCLAIN ALFONSO, P.A.
Post Office Box 4
37908 Church Avenue
Dade City, FL 33526-0004
Tel.: (352) 567-5636
Fax: (352) 567-6696
DAlfonso@mcclainalfonso.com
Eserve@mcclainalfonso.com

Seldon J. Childers, Esq.
ChildersLaw, LLC
2135 NW 40th Terrace, Suite B
Gainesville, FL 32605
jchilders@smartbizlaw.com
notice@smartbizlaw.com

Jonathan O'Brien, Esq.
Law Office of Jonathan O'Brien
745 Fifth Avenue, Suite 500
New York, NY 10151
jobrien@burnsobrienlaw.com

*/s/ Charles H. Hardage*
Charles H. Hardage
Florida Bar No. 76917

# EXHIBIT A

Pasco County Schools
Kurt S. Browning, Superintendent of Schools
7227 Land O' Lakes Boulevard • Land O' Lakes, Florida 34638

January 21, 2022

Rebecca Yuengling
23953 Terracina Court
Land O' Lakes, FL 34639

Dear Mrs. Yuengling,

Since the beginning of the 2021-2022 school year, it has been evident that you are dissatisfied with Cypress Creek High School. Your voluminous emails (in excess of 500 pages), phone calls, public statements and posts on social media are not only harassing in nature to administration and staff, but also disruptive to the learning environment for our students.

Additionally, three employees, Ms. Kropik (Math), Mr. Floyd (World History), and Ms. Herzek (Criminal Justice), have sought circuit court injunctions against you, all of which have been denied. Based on information received from Principal Hetzler-Nettles, your behavior has caused one of our math teachers to take leave and she has indicated that she will not be returning to the Pasco District. The continued false and outrageous allegations of wrongdoing by my employees can no longer continue.

**Therefore, effective Wednesday, January 26, 2022, your child, H[redacted] Y[redacted], is reassigned to Sunlake High School, with transportation**. Please note, pursuant to School Board Policy 5120, *the Superintendent may assign or reassign students on a case-by-case basis to schools or programs other than that designated by the attendance area when the Superintendent or designee determine that such an exception is in the best educational interest of the child, or to prevent disruption of the educational environment, or otherwise promote the health, safety, or welfare of the student, other students, or staff.*

Your son, P[redacted] Y[redacted], will be permitted to remain at Cypress Creek Middle School through 8th Grade. Upon entering 9th Grade, he will be reassigned to Sunlake High School, as well. Should reassignment of your daughter cause any issues with having students on two separate campuses, I will, at your request, reassign your son to Charles S. Rushe Middle School, with transportation.

It is my sincere hope that this action will result in positive outcomes for all parties involved.

Kurt S. Browning
Superintendent of Schools

# EXHIBIT B

***Assignment by Superintendent:***

In accordance with School Board Policy 5120, the Superintendent may assign or reassign students on a case-by-case basis to schools or programs other than that designated by the attendance area when the Superintendent or designee

determine that such an exception is in the best educational interest of the child, or to prevent disruption of the

educational environment, or otherwise promote the health, safety, or welfare of the student, other students, or staff.

Any assignment or reassignment of a student under School Board Policy 5120 or this provision is not disciplinary in

nature, and any reassignments based on discipline must be performed in accordance with the "Disciplinary

Reassignment" section, above. Superintendent assignments or reassignments can only be performed on a case-by_case basis, and must be supported by facts and circumstances that would support the assignment or re-assignment.

***Students that are subject to an assignment or re-assignment as the result of this process, and who disagree with the assignment or re-assignment will be afforded due process and have the right to request a hearing in front of an Independent Hearing Officer (IHO).*** To be upheld, the preponderance of the evidence must show and otherwise

support that the assignment or re-assignment is necessary and appropriate to promote the best educational interest of

the child, or prevent disruption of the educational environment, or otherwise promote the health, safety, or welfare

of the student, other students, or staff. The IHO may review the evidence provided by the Superintendent, or

designee, and issue a decision if the parent/guardian waives their right to appeal, refuses to participate in a hearing

or fails to appear for a scheduled meeting

Student and Parent/Guardian Appeal Rights

Parent/guardian rights during the discipline appeal process include, but are not limited to, the following:

**Appeal Rights**

• The parent/guardian and students over the age of eighteen (18) have the right to inspect any written, video or

physical evidence that the school has used to make a disciplinary decision, said evidence will be provided to

the parent by the school administration upon request

• The school will redact (remove any identifying names and/or information) from any requested evidence

prior to providing said evidence to the parent

• Parents/guardians have the right to view any unredacted video evidence at the school with an administrator,

parents will incur a cost for redaction if they are requesting a copy of said video evidence

• Parents/guardians have the right to provide a defense including, but not limited to: providing an explanation

of the alleged disciplinary infraction, their own witness statements, their own copies of social media, etc.

• Parents/guardians may be represented by an attorney or advocate at their own expenses and must notify the

school administration, superintendent or designee as soon as possible if they will be represented by an

attorney

• The school administration, superintendent or designee has the right to inspect and question any evidence

presented by the parent/guardian

• The recording of a non-public meeting involving students (including an EP or IEP Team meeting) is

prohibited unless a parent, authorized representative of a parent, or team member, is unable to understand or

meaningfully participate in the process or the planning of the relevant student's education due to a disability,

language barrier, or some other impairment. (DSBPC 2461)

## Student Attendance During Appeal

• The student will return to school (OSS), resume normal class attendance (ISS) or resume bus transportation

pending the school level appeal

• Students will return to school after their OSS has been completed if a disciplinary reassignment

recommendation is still pending

***• The Superintendent or designee may only ban a student from campus or the bus during formal appeal if the***

***student's presence poses an imminent threat of danger or risk of a major campus disruption as defined***

***elsewhere in this document, in such cases, the appeal shall be expedited***

• Suspension of extracurricular activities will remain in effect during the appeal

# EXHIBIT C

---

**From:** RICHARD YUENGLING <[redacted]9@[redacted]l.com>
**Sent:** 31 July 2022 22 44
**To:** Jonathan O'Brien <jobrien@burnsobrienlaw.com>; arthur gallagher <[redacted]ty@[redacted]ail.com>
**Subject:** My full email requesting appeal to Superintendent & School Board

Good Evening,
Attached is my full email requesting an appeal with the School Board. Thank you Rich

Sent from my iPhone

Begin forwarded message:

**From:** [redacted]9@[redacted]l.com
**Date** January 21, 2022 at 10 44 12 PM EST
**To:** re[redacted]st@[redacted]l.com
**Reply-To:** [redacted]9@[redacted]l.com

Reque t Formal Immediate Appeal and immediate tay of my Daughter H[redacted] Y[redacted] Removal, Suspension, Disciplinary placement, and Expulsion from Cypress Creek High School.

Hello Pa co County Board Member

On, January 21, 2022 my wife, Rebecca Yuengling received an email from what appears to be from Superintendent Kurt Browning. If the email was not sent by Mr Browning, please advi e me I didn't receive the email, however; I wa able to read it The email i attached It is unquestionable that Mr Browning does not like my wife being vocal in the board meetings, at the school or even on her social media posts. Furthermore. If my wife believes she has credible information in reference to a federal case, it's up to the federal inve tigator to decide Not me or the School Board I would like to thank Colleen Beaudoin for her response, which was the same that I gave my wife. My wife has reached out to that federal investigator.

I have to say “Wow!” though, I am really shocked. In the email, it Sounds like Mr Browning wants to expel my wife from school, However, this shouldn’t affect my daughter. My daughter ha not committed any of the offence that are li ted under The Pa co School Policy Manual, section 5000, more specifically section 5610. My daughter should not be affected by my wife expressing her concerns. The decision to do so is also not properly pled in board policy 5120. My daughter has done nothing wrong.

I know there is animosity between my wife, the School Principal and Mr Browning. That is why we do plan to school choice my daughter next year. Removing her from her school now is extremely disruptive and will greatly impact her negatively. Furthermore, no child hould be ingled out for di cipline merely ba ed on the action of a parent If my daughter had a serious breach of conduct, I would totally understand removal from the school, but that’s not the case. My daughter is extremely athletic and plans to try out for the Lacross team in the next couple of weeks. She has many friends and is a member of the National Junior Honor Society My daughter al o want to be a K9 Deputy or Military K9 when he grows up, this will also disrupt her Criminal Justice class. I feel my daughter needs to learn from diverse teachers with varying views. I’m proud of how my daughter has learned to be professional and civil with teachers and students she disagrees with.
My daughter’ educational and career goal will be negatively impacted by abruptly changing schools with only a few months left. It is clearly not in the best interest of my daughter. I think it’s best to collaborate with parents instead of making a unilateral decision. Working together to prevent such disruptions promotes the welfare of students, health, educational environment and taff Moreover,my daughter ha 2 parent , not ju t one

I can understand that it’s difficult times and trying to please people from all different Political beliefs is a pretty much impossible task. Someone is always going to be upset. Many of you know me, ome of you don’t but I think you all know how difficult my job i It’ not ea y dealing with the public and working numerous overtime hours due to staffing shortages. I still always do my best to be Professional and civil even though there’s always someone who wants to fight me.
I am re pon ible for my own deci ion , a are my wife and children It urpri e me to ay the least that my daughter is being held responsible for my wife’s actions. Although you may or may not agree, My wife has the right to express her concerns that she feels are legitimate without having our children affected.

I respectfully request an immediate stay on my daughters Expulsion and transfer pending a formal board hearing on this matter,
Thank you for reading this email
Re pectfully,
Richard Yuengling, H[redacted] Y[redacted]’s father

# EXHIBIT D

January 24, 2022 at 2:29 PM

# School Reassignment

Mr. Yuengling:

Thank you for your email on Friday night, January 21, 2022, regarding the placement of your daughter, H[redacted] Y[redacted], at Sunlake High School. While my decision to administratively reassign your daughter to Sunlake High School is a non-appealable decision, I would like to offer the opportunity for you to meet with Principal Hetzler-Nettles, my staff and me to discuss the events that lead to this decision being made.

Please let Marsha Rux know if you would like to schedule time for you to meet. Mrs. Rux's number is [redacted]. Sunlake High School looks forward to welcoming your daughter on Wednesday, January 26th.

Kurt S. Browning
Pasco County Superintendent of Schools

# EXHIBIT E

From: Megan Harding
To: r[redacted]75@[redacted]il.com
January 24, 2022 at 9:51 AM

**Re: Request Formal Immediate Appeal and immediate stay of my Daughter H[redacted] Y[redacted]'s Removal, Suspension, Disciplinary placement, and Expulsion from Cypress Creek High School.**

Good morning,
Thank you for your email. I have forwarded this along to school board counsel. It is my understanding that the school assignment is not appealable to the board.

Thank you,

Megan Harding
Pasco County School Board Member, District 5
[redacted]

# EXHIBIT F

**IN THE CIRCUIT COURT OF THE 6TH JUDICIAL CIRCUIT**

**PASCO COUNTY, FLORIDA**

**CIVIL ACTION**

RICHARD A YUENGLING, OBO

H[redacted]Y[redacted]AND P[redacted]Y[redacted]

Plaintiff, CASE NO: 2022CA 199WS G

Filed For Record Pasco County, Florida
2022 JAN 25 AM 1:35
Nikki Alvarez-Sowles Clerk & Comptroller Pasco County, Florida

v.

Kurt S. Browning, Allen Altman, Colleen Beaudoin, Cynthia Armstrong, Alison Crumbley, Megan Harding, individual and Pasco County School District, Pasco County School Board and Pasco County School Superintendent

UNOFFICIAL DOCUMENT

**<u>EMERGENCY MOTION AND COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES, TIME TO RETAIN COUNSEL AND OTHER STATUTORY RELIEF</u>**

Plaintiff, RICHARD A YUENGLING, OBO H[redacted]Y[redacted]AND P[redacted]Y[redacted] sues defendants, Kurt S. Browning, Allen Altman, Colleen Beaudoin, Cynthia Armstrong, Alison Crumbley, Megan Harding, individual and Pasco County School District, Pasco County School Board and Pasco County School Superintendent, an individual, collectively referred to herein as "Defendants" and alleges:

**JURISDICTION AND VENUE**

1. This is an action for Emergency injunctive and other statutory relief, brought pursuant to the following statutes:

(a) Fla. Stat. Ann. § 1006.09(2)

(b) Fla. Stat. Ann. § 1006.09 (West).

(c) Fla. Stat. 1003.32, 1006.07

(d) 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1985) U.S. Supreme Court
(1) the Supreme Court held that a student facing suspension from a public school has

property and liberty interests that qualify for protection under the due process clause of the Fourteenth Amendment. Goss, 95 S.Ct. at 736.

In Goss nine students were suspended from high school without a hearing. The suspensions were based upon disruptive or disobedient conduct. The court commented that the fundamental requisite of due process is the opportunity to be heard and declared that at the very minimum, students facing suspension must be given some kind of notice and afforded some kind of hearing. Goss, 95 S.Ct. at 738.

The court noted, however, that interpretation and application of due process are intensely practical matters which negate any concept of inflexible procedures universally applicable to every imaginable situation. Goss, 95 S.Ct. at 738. The timing and content of the notice and the nature of the hearing depends upon the appropriate accommodation of the competing interests. Goss, 95 S.Ct. at 738–39.

After Goss, it became clear that due process in student disciplinary proceedings requires adequate notice, an opportunity to be heard, and substantial evidence to support the penalty. There are, however, no hard and fast rules by which to measure meaningful notice. Nash v. Auburn Univ., 812 F.2d 655 (11th Cir.1987).

The due process requirement of an administrative proceeding is that the proceeding must be "essentially fair". See Gordon v. Savage, 383 So.2d 646 (Fla. 5th DCA 1980).

2. This court has subject matter jurisdiction pursuant to the provisions of Florida Statutes

3. All actions material to the complaint have occurred within one (1) year of the filing this Action.

4. The statutory violations alleged herein occur in or in the 6th judicial circuit in the State of Florida, including Pasco County

5. This matter comes to the court as an emergency motion as the Decision made by Kurt S. Browning takes effect tomorrow, January 26, 2022. Plaintiff has not recieved proper notice, other than an informal e-mail on Januray 24th 2022 and an email sent to Plaintiff's wife, Rebecca Yuengling on January 21, 2022. Plaintiff has right to be served, due process rights, rights to Counsel and appeal rights.

6. Venue is proper in Pasco County, Florida

**EMERGENCY MOTION FOR INJUNCTIVE RELIEF REQUEST**

1. Plaintiff formaly requests the court to stay the Decision made January 21, 2022 by Kurt S. Browning, Superintendent Pasco County Schools, Removing, expelling and reassiging the Plaintiff from their zoned school.



UNOFFICIAL DOCUMENT

(a) Statement of fact: Plaintiff P[redacted] Y[redacted] has no previous or pending disciplinary actions.

(b) Statement of Fact: H[redacted] Y[redacted] has no current disciplinary actions pending. The only disciplinary action against H[redacted] Y[redacted] that i'm aware of is in regards to a phone policy violation sending a text to her mother regarding a medical issue.

(c) Both Plaintiff's H[redacted] Y[redacted] and P[redacted] Y[redacted] are attending Pasco County Schools in good standing.

(d) Plaintiff H[redacted] Y[redacted] is extremely depressed over the possiblity of moving from her zoned school. On 1/24/2022 H[redacted] Y[redacted] made the Lacrosse team at Cypress Creek High School. H[redacted] has many friends and is a member of the USAG and AAU gymnastics league. She is well rounded and actively participates in her Church youth group. H[redacted] wants to be a K9 Deputy or Military K9 when she grows up. Defendant Mr Bowning's decision without consulting Plaintiff will also disrupt Plaintiff's Criminal Justice class progress this year. The class is not offered at the transfer school and disrupts the Educational and Career goals of Plaintiff. Plaintiff H[redacted] requests that she remain at Cypress Creek High this year as she has done nothing wrong. Removing Plaintiff from school and reassignment will cause permanent irreparable harm, as Plaintiff H[redacted] feels she is being being punished for doing nothing wrong. Plaintiff P[redacted] also feels that he is being punished as he has done nothing wrong as well. Plaintiff Richard Yuengling attempts to appeal have met with negative results. On 1/24/2022 Defendant Kurt S. Browning sent an email to Plaintiff Richard Yuengling stating its a "Non-appealable decision" On Defendant's decision (Kurt Browning) is not in the best interest of Plaintiff as it disruptions the welfare of students, health, educational environment. The only basis for removal are due to Plaintiff's wife Rebecca Yuengling's email's to the school, school board, public comments and social media posts.

(e) No Disciplinary action is alleged against H[redacted] Y[redacted] or P[redacted] Y[redacted] in any Email/order from Kurt Browning

**PLAINTIFFS**

7. Plaintiff is Parent of minor children H[redacted] Y[redacted] and P[redacted] Y[redacted], and is authorized to bring this action and seek injunctive relief. Plaintiff has property and liberty interests that qualify for protection under the due process clause of the Fourteenth Amendment. Goss, 95 S.Ct. at 736

8. The due process requirement of an administrative proceeding is that the proceeding must be "essentially fair". See Gordon v. Savage, 383 So.2d 646 (Fla. 5th DCA 1980).

**DEFENDANTS**

**Kurt S. Browning, Allen Altman, Colleen Beaudoin, Cynthia Armstrong, Alison Crumbley, Megan Harding, individual and Pasco County School District, Pasco County School Board and Pasco County School Superintendent**

Pasco Schools is a non profit organization, Employer Identification Number: 596000792 Kurt S. Browning is Superintendant, Allen Altman, Colleen Beaudoin, Cynthia Armstrong, Alison Crumbley, Megan Harding are on the District School Board of Pasco County.

9. Pasco County Schools does business at the following location:

7227 Land O Lakes Blvd Land O' Lakes, FL 34638

**STATEMENT OF FACTS AND**
**DEFENDANTS' COURSE OF CONDUCT**

10. On January 21, 2022 Defendant Kurt S. Browning, Superintendent of Pasco Schools emailed Rebecca Yuengling an Action on Official Letterhead of " Pasco County Schools"

"Effective Wednesday, January 26, 2022, your child, H[redacted] Y[redacted] is reassigned to Sunlake High School, with transportation." Please note, pursuant to School Board Policy 5120, the Superintendent may assign or reassign students on a case-by case basis to schools or programs other than that designated by the attendance area when the Superintendent or designee determine that such an exception is in the best educational interest of the child, or to prevent disruption of the educational environment, or otherwise promote the health, safety, or welfare of the student, other students, or staff."

"Your Son, P[redacted] Y[redacted], will be permitted to remain at Cypress Creek Middle through 8th Grade. Upon entering 9th Grade, he will be reassigned to Sunlake High School, as well. Should reassignment of your daughter cause any issues with having students on two seperate campuses, I will, at your request, reassign your son to Charles S. Rushe Middle School, With Transportation"

11. Defendant's Browning notice to my wife did not include:

- The reasons for the children to be moved and any allegations of disruptive behavior by Plaintiff H[redacted] Y[redacted] or P[redacted] Y[redacted].

-The right of the student or parent/legal guardian to appeal to the Board or its designee; and

-The student's right to be represented in all appeal proceedings.

12. Defendant Browning's notice did include:

- Complaints about Plaintiff's wife social media posts

- Complaints about public statements made by Plaintiff's wife

- Complaints about emails by Plaintiff's wife were voluminous

- Complaints about court cases dismissed because of no merit by the Pasco Clerk of Court

13. The above-described acts and practices of Defendants have injured and will likely continue to injure and prejudice the Plaintiff and the public.

14. Unless the Defendants are permanently enjoined from engaging further in the acts and practices complained of herein, the continued activities of the Defendants will result in irreparable injury to the Plaintiff and public for which there is no adequate remedy at law

(a) Injunctive relief is sought against defendants for violations of the 14th Amendment, Fla. Stat. 1003.32, 1006.07, Fla. Stat. Ann. § 1006.09(2), Fla. Stat. Ann. § 1006.09 (West).

15. Pasco County Board Member reponded in email " It is my understanding school assignment is not appealable to the board"

UNOFFICIAL DOCUMENT

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Richard Yuengling, OBO H[redacted] and P[redacted] Y[redacted] respectfully requests that this Court grant:

16 .Assess civil penalties against Defendants, in the amount of $10,000 for each violation of Fl statutes.

17. Injunctive relief against the Defendants for violations of the 14th amendment and Florida Satutes.

18. Award the Plaintiff and costs pursuant to the law

19. Award such other relief as the interests of justice shall require and that this Honorable Court may deem just and proper.

Respectfully Submitted,
Richard Yuengling,

23953 TERRACINA CT
LAND O LAKES, FL. 34639

UNOFFICIAL DOCUMENT

**Pasco County Schools**
Kurt S. Browning, Superintendent of Schools
7227 Land O'Lakes Boulevard • Land O' Lakes, Florida 34638

January 21, 2022

Rebecca Yuengling
23953 Terracina Court
Land O' Lakes, FL 34639

Dear Mrs. Yuengling,

Since the beginning of the 2021-2022 school year, it has been evident that you are dissatisfied with Cypress Creek High School. Your voluminous emails (in excess of 500 pages), phone calls, public statements and posts on social media are not only harassing in nature to administration and staff, but also disruptive to the learning environment for our students.

Additionally, three employees, Ms. Kropik (Math), Mr. Floyd (World History), and Ms. Herzek (Criminal Justice), have sought circuit court injunctions against you, all of which have been denied. Based on information received from Principal Hetzler-Nettles, your behavior has caused one of our math teachers to take leave and she has indicated that she will not be returning to the Pasco District. The continued false and outrageous allegations of wrongdoing by my employees can no longer continue.

**Therefore, effective Wednesday, January 26, 2022, your child, [redacted], is reassigned to Sunlake High School, with transportation.** Please note, pursuant to School Board Policy 5120, *the Superintendent may assign or reassign students on a case-by-case basis to schools or programs other than that designated by the attendance area when the Superintendent or designee determine that such an exception is in the best educational interest of the child, or to prevent disruption of the educational environment, or otherwise promote the health, safety, or welfare of the student, other students, or staff.*

Your son, [redacted], will be permitted to remain at Cypress Creek Middle School through 8th Grade. Upon entering 9th Grade, he will be reassigned to Sunlake High School, as well. Should reassignment of your daughter cause any issues with having students on two separate campuses, I will, at your request, reassign your son to Charles S. Rushe Middle School, with transportation.

It is my sincere hope that this action will result in positive outcomes for all parties involved.

Kurt S. Browning
Superintendent of Schools

# EXHIBIT G

**IN THE CIRCUIT COURT, THE SIXTH JUDICIAL CIRCUIT IN AND FOR**

**PASCO COUNTY, FLORIDA**

**CIVIL ACTION**

**RICHARD A YUENGLING, OBO**

**H[redacted] Y[redacted] AND P[redacted] Y[redacted]**

Plaintiff, CASE NO: 2022CA199WS

**vs.**

**Pasco County School District**, et al.,

**Kurt Browning** Pasco County School Superintendent

and Defendant (s),

**AMMENDED MOTION REQUESTING AN EXPEDITED HEARING FOR INJUNCTIVE RELIEF**

**JURISDICTION AND VENUE**

1. This is an expedited action for an injunctive and other statutory relief, brought pursuant to the following statutes:

(a) Fla. Stat. Ann. § 1006.09(2)

(b) Fla. Stat. Ann. § 1006.09 (West).

(c) Fla. Stat. 1003.32, 1006.07

(d) 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1985) U.S. Supreme Court

(1) the Supreme Court held that a student facing suspension from a public school has property and liberty interests that qualify for protection under the due process clause of the Fourteenth Amendment. Goss, 95 S.Ct. at 736.

In Goss nine students were suspended from high school without a hearing. The suspensions were based upon disruptive or disobedient conduct. The court commented that the fundamental requisite of due process is the opportunity to be heard and declared that at the very minimum, students facing suspension must be given some kind of notice and afforded some kind of hearing. Goss, 95 S.Ct. at 738.

The court noted, however, that interpretation and application of due process are intensely practical matters which negate any concept of inflexible procedures universally applicable to every imaginable situation. Goss, 95 S.Ct. at 738. The timing and content of the notice and the nature of the hearing depends upon the appropriate accommodation of the competing interests. Goss, 95 S.Ct. at 738–39.

After Goss, it became clear that due process in student disciplinary proceedings requires adequate notice, an opportunity to be heard, and substantial evidence to support the penalty. There are, however, no hard and fast rules by which to measure meaningful notice. Nash v. Auburn Univ., 812 F.2d 655 (11th Cir.1987).

The due process requirement of an administrative proceeding is that the proceeding must be "essentially fair". See Gordon v. Savage, 383 So.2d 646 (Fla. 5th DCA 1980).

2. This court has subject matter jurisdiction pursuant to the provisions of Florida Statutes

3. All actions material to the complaint have occurred within one (1) year of the filing this Action.

4. The statutory violations alleged herein occur in or in the 6th judicial circuit in the State of Florida, including Pasco County

5. This matter comes to the court as an Expedited motion as the Decision made by Kurt S. Browning taken effect on January 26, 2022. Plaintiff has not recieved proper notice, other than an informal e-mail on Januray 24th 2022 and an email sent to Plaintiff's wife, Rebecca Yuengling on January 21, 2022. Plaintiff has right to be served, due process rights, rights to Counsel and appeal rights.

6. Venue is proper in Pasco County, Florida

**EXPEDITED MOTION FOR INJUNCTIVE RELIEF REQUEST**

1. Plaintiff formally requests the court to stay the Decision made January 21, 2022 by Kurt S. Browning, Superintendent Pasco County Schools, Removing, expelling and reassigning the Plaintiff(s) from their zoned school.

(a) Statement of fact: Plaintiff P[redacted] Y[redacted] has no previous or pending disciplinary actions.

(b) Statement of Fact: H[redacted] Y[redacted] has no current disciplinary actions pending. The only disciplinary action against H[redacted] Y[redacted] that i'm aware of is in regards to a phone policy violation sending a text to her mother regarding a medical issue.

(c) Both Plaintiff's H[redacted] Y[redacted] and P[redacted] Y[redacted] are attending Pasco County Schools in good standing.

(d) Plaintiff H[redacted] Y[redacted] is extremely depressed over the transfer moving her from her zoned school. On 1/26/2022, Plaintiff H[redacted] Y[redacted] was transferred to Sunlake High School

without parent permission. On 1/24/2022 H[redacted] Y[redacted] made the Lacrosse team at Cypress Creek High School. H[redacted] has many friends she has known for 9 years at Cypress Creek High School. She is a member of the USAG and AAU gymnastics league. She is well rounded and actively participates in her Church youth group. H[redacted] wants to be a K9 Deputy or Military K9 when she grows up. Defendant Mr Bowning's decision without consulting Plaintiff will also disrupt Plaintiff's Criminal Justice class progress this year. The class is not offered at the transfer school and disrupts the Educational and Career goals of Plaintiff. Plaintiff H[redacted] requests that she remain at Cypress Creek High this year as she has done nothing wrong. Removing Plaintiff from school and reassignment will cause permanent irreparable harm, as Plaintiff H[redacted] feels she is being punished for doing nothing wrong. Plaintiff H[redacted] stated that "It's like removing me from my home with my family and putting me in another home with a strange family I don't know" Plaintiff P[redacted] also feels that he is being punished as he has done nothing wrong as well. Plaintiff Richard Yuengling attempts to appeal have met with negative results. On 1/24/2022 Defendant Kurt S. Browning sent an email to Plaintiff Richard Yuengling stating its a "Non-appealable decision" Defendant's decision (Kurt Browning) is not in the best interest of Plaintiff as it disruptions the welfare of students, health, and educational environment. The only basis for removal are due to Plaintiff's wife Rebecca Yuengling's email's to the school, school board, public comments and social media posts.

(e) No Disciplinary action is alleged against H[redacted] Y[redacted] or P[redacted] Y[redacted] in any Email/order from Kurt Browning

## PLAINTIFFS

7. Plaintiff is Parent of minor children H[redacted] Y[redacted] and P[redacted] Y[redacted], and is authorized to bring this action and seek injunctive relief. Plaintiff has property and liberty interests that qualify for protection under the due process clause of the Fourteenth Amendment. Goss, 95 S.Ct. at 736

8. The due process requirement of an administrative proceeding is that the proceeding must be "essentially fair". See Gordon v. Savage, 383 So.2d 646 (Fla. 5th DCA 1980).

## DEFENDANTS

**Kurt S. Browning, Allen Altman, Colleen Beaudoin, Cynthia Armstrong, Alison Crumbley, Megan Harding, individual and Pasco County School District, Pasco County School Board and Pasco County School Superintendent**

Pasco Schools is a non profit organization, Employer Identification Number: 596000792 Kurt S. Browning is Superintendent , Allen Altman, Colleen Beaudoin, Cynthia Armstrong, Alison Crumbley, Megan Harding are on the District School Board of Pasco County.

9. Pasco County Schools does business at the following location:

7227 Land O Lakes Blvd Land O' Lakes, FL 34638

## STATEMENT OF FACTS AND DEFENDANTS' COURSE OF CONDUCT

10. On January 21, 2022 Defendant Kurt S. Browning, Superintendent of Pasco Schools emailed Rebecca Yuengling an Action on Official Letterhead of " Pasco County Schools"

" Dear Mrs Yuengling,

Since the beginning of 2021-2022 school year, it has been evident that you are dissatisfied with Cypress Creek High School. Your voluminous emails (in excess of 500 pages), phone calls public statements and posts on social media are not only harassing in nature to administration and staff, but also disruptive to the learning environment for our students."

"Additionally, three employees, Ms Kropik (Math), Ms. Floyd (World History), and Ms. Herzek(Criminal Justice), have sought circuit injunctions against you, all of which have been denied. Based on information received from Principal Hetzler-Nettles, your behavior has caused one of our math teacher to take leave and she has indicated that she will not be returning to the Pasco District. The continued false and outrageous allegations of wrongdoing by my employees can no longer continue."

"Effective Wednesday, January 26, 2022, your child, H[redacted] Y[redacted] is reassigned to Sunlake High School, with transportation." Please not, pursuant to School Board Policy 5120, the Superintendent may assign or reassign students on a case-by case basis to schools or programs other than that designated by the attendance area when the Superintendent or designee determine that such an exception is in the best educational interest of the child, or to prevent disruption of the educational environment, or otherwise promote the health, safety, or welfare of the student, other students, or staff."

"Your Son, P[redacted] Y[redacted], will be permitted to remain at Cypress Creek Middle through 8th Grade. Upon entering 9th Grade, he will be reassigned to Sunlake High School, as well. Should reassignment of your daughter cause any issues with having students on two separate campuses, I will, at your request, reassign your son to Charles S. Rushe Middle School, With Transportation"

11. Defendant's Browning notice to my wife did not include:

- The reasons for the children to be moved and any allegations of disruptive behavior by Plaintiff H[redacted] Y[redacted] or P[redacted] Y[redacted].

-The right of the student or parent/legal guardian to appeal to the Board or its designee; and

-The student's right to be represented in all appeal proceedings.

12. Defendant Browning's notice did include:

- Complaints about Plaintiff's wife social media posts

- Complaints about public statements made by Plaintiff's wife

- Complaints about emails by Plaintiff's wife were voluminous

- Complaints about court cases dismissed because of no merit by the Pasco Clerk of Court

13. The above-described acts and practices of Defendants have injured and will likely continue to injure and prejudice the Plaintiff and the public.

14. Unless the Defendants are permanently enjoined from engaging further in the acts and practices complained of herein, the continued activities of the Defendants will result in irreparable injury to the Plaintiff and public for which there is no adequate remedy at law

(a) Injunctive relief is sought against defendants for violations of the 14th and 1st Amendment, Fla. Stat. 1003.32, 1006.07, Fla. Stat. Ann. § 1006.09(2), Fla. Stat. Ann. § 1006.09 (West).

15. Pasco County Board Member responded in email " It is my understanding school assignment is not appealable to the board"

## PRELIMINARY INVESTIGATION RESULTS

16. A review of the voluminous emails (in excess of 500 pages) indicate many, if not most of the pages are attachments. Most of which appear to be sent to and received from Pasco Schools district Staff. Plaintiff is unable to verify voluminous e-mails to the staff or teachers at Cypress Creek high school. The attachments sent to or received from the Pasco School district include numerous pages from Equal Opportunity Schools, The New Teacher's Project (TNTP) Bathroom policies, Teacher's curriculum, curriculum challenges, contracts and training.

17. Public statements and social media posts. The First Amendment protects individuals from government censorship. Social media platforms are private companies, and can censor what people post. Plaintiff's wife, Rebecca Yuengling has never been charged, or accused of any violation of Florida Statute 877.03 Breach of the peace or disorderly conduct. In Fact, a diligent search on the public website Pasco County Clerks revealed no criminal history.

18. "Three employees, Ms Kropik (Math), Ms. Floyd (World History), and Ms. Herzek(Criminal Justice), have sought circuit injunctions against you" A diligent search of the Pasco Clerks website has revealed that there was nothing filed by any of three teachers, in fact nothing exists, no petition, no hearing or case number can be found. This is concerning to plaintiff because Mr Browning used this as a cause for removal of H[redacted] and P[redacted] Y[redacted] from Cypress Creek High School. Florida Statute 784.0485 allows certain persons to petition for an injunction for protection against stalking. According to Florida criminal law, stalking is defined as when someone willfully (intentionally), maliciously, and repeatedly follows, harasses, or cyberstalks another person.

(a) "Harass" means to engage in a course of conduct directed at a specific person that causes substantial emotional distress in such person and serves no legitimate purpose. The threat must be against the life of, or a threat to cause bodily injury to, a person. A preliminary review of Rebecca Yuengling's emails reveal no such threats were made to any staff at Cypress Creek high school, teachers or staff at the Pasco County District office. Defendant has not specified what 'The continued false and outrageous allegations of wrongdoing by my employees" are.

(b) Ms. Kropic is no longer employeed by the Pasco School District

(c) Plaintiff H[redacted] Y[redacted] likes Ms. Floyd, she stated she is nice and is quiet in class.

(d) Plaintiff H[redacted] Y[redacted] likes Ms Herzek, she stated she is a nice person. H[redacted] feels Some of the questions in her class were weird, hence the curriculum challenges.

**RELIEF FOR DEFENDANT(S)**

19. Plaintiff Richard Yuengling, will, in the best interest of H[redacted] & P[redacted] Y[redacted] intervene, all contact with Cypress Creek High School, including but not limited to emails, phone calls and the school's social media platform go threw him. In the event of any emergencies the school will contact Richard Yuengling first. If contact is unable to be made the School SRO can contact Rebecca Yuengling in the event of an emergency. Plaintiff's wife Rebecca Yuengling has agreed to this in the best interest of H[redacted] & P[redacted] Y[redacted]

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Richard Yuengling, OBO H[redacted] and P[redacted] Y[redacted] respectfully requests that this Court grant:

20 .Assess civil penalties against Defendants, in the amount of $10,000 for each violation of Federal and Florida statutes.

21. Injunctive relief against the Defendants.

22. Relief for violations of the 14th and 1st amendment and Florida statutes.

23. Award the Plaintiff and costs pursuant to the law

24. Award such other relief as the interests of justice shall require and that this Honorable Court may deem just and proper.

Respectfully Submitted,
Richard Yuengling,

______________________________

23953 Terracina Ct
Land O Lakes, Fl 34639

# EXHIBIT H

CHRIS NOCCO, SHERIFF

# PASCO SHERIFF'S OFFICE

TEAMWORK • PROFESSIONALISM • SERVICE

March 16, 2022

Deputy Richard Yuengling
Pasco Sheriff's Office
20101 Central Blvd.
Land O' Lakes, Florida 34637

Ref: IA 2022-006 (B)

Deputy Yuengling:

After careful review of the circumstances and documentation surrounding the alleged violation of General Order 26.1, II. Rules and Regulations: A. Neglect of Duty Offenses, (19) Failure to Follow General Orders, Directives, Procedures and Special Orders, *to wit,* General Order 22.8 Certified Uniform and Personal Appearance, VI. General Uniform Regulations: A. Deputies will make every effort to preserve the dignity of the uniform and the agency. Deputies will not wear the agency uniform or identifying insignia at times, or in places, that could foster negative public opinion or give the appearance of using the uniform for personal gain or influence. While in uniform, deputies will avoid activities that could give the impression they are loafing or conducting personal business on duty. Uniforms and other agency apparel bearing Sheriff's office markings will only be worn on duty; I find this violation is sustained.

You are hereby issued this Letter of Reprimand and the following sanction: reassignment to Security Services and not to be considered for transfer for six months, effective March 16, 2022. Your receipt of this letter is acknowledged by your signature at the bottom of the copy provided and will be placed in your Professional Standards file.

Be advised, any further violations of office policy and procedures may result in more severe discipline, including termination.

As a reminder, retaliation against other members or citizens for making a complaint or participating in a disciplinary inquiry or investigation is strictly prohibited. Please see General Order 25.2 – Harassment and Discrimination. Retaliation includes, but is not limited to, refusing to talk to the person, encouraging others to treat the person differently, and/or making disparaging statements about the person.

Sincerely,

Major Stacey A. Jenkins
Court Services Bureau

SJ/jaf

cc: Professional Standards Unit

I, ________________, hereby acknowledge receipt of this letter on 3-21, 2022.

# EXHIBIT I

**Sent:** 12/16/2021 12:00:00 AM
**From:** Raymond E. Gadd <Gadd
**To:** "Jeffrey"
**Cc:**
**Bcc:**
**Importance:** Normal
**Subject:** RE: Ray Gadd

---

Colonel Harrington my original intent in sending this email was to determine the status of the kyle Ritsema case. However, after further review of this email , sent to my boss and school board members, Mrs. Yuengling has accused me of assault not only against her but also the victims of abuse at Cypress Creek High School. To my knowledge no child at CCHS has come forward as a victim. Nor do I believe I assaulted anyone. My behavior at this meeting is on video and Officer Oakley was behind me at all times including the time I was looking into the audience. She has accused me of criminal conduct. I don't know if this is something that can be investigated but I would like her assertion that I assaulted her and others investigated and I am happy to cooperate in any way that is deemed appropriate.

Ray Gadd

Ray Gadd
Deputy Superintendent
Pasco County Schools
813-215-9648

**From:** Jeffrey Harrington <JHarrington@pascosheriff.org>
**Sent:** Thursday, December 16, 2021 8:58 AM
**To:** Raymond E. Gadd <rgadd@pasco.k12.fl.us>
**Subject:** RE: Ray Gadd

CAUTION: This email originated from outside Pasco County Schools. DO NOT click links or open attachments unless you recognize the sender and know the content is safe.

Ray, I understand and we will assess where the case are right now.

**Colonel Jeff Harrington**
**Chief Deputy**
**Pasco Sheriff's Office**
**8700 Citizens Drive**
**New Port Richey, Florida 34654**
**727-844-7795**

**From:** Raymond E. Gadd <rgadd@pasco.k12.fl.us>
**Sent:** Wednesday, December 15, 2021 3:39 PM
**To:** Jeffrey Harrington <JHarrington@pascosheriff.org>
**Subject:** Fwd: Ray Gadd

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

This is why I would like to know the status of Ritsema case

Sent from my iPhone

Begin forwarded message:

> **From:** "Kurt S. Browning" <ksbrown@pasco.k12.fl.us>
> **Date:** December 15, 2021 at 3:28:17 PM EST
> **To:** "Raymond E. Gadd" <rgadd@pasco.k12.fl.us>
> **Subject:** FW: Ray Gadd
>
> FYI
> Marsha
>
> ---
>
> **From:** rebeccadegrassi@aol.com <rebeccadegrassi@aol.com>

**Sent:** [illegible]
**From:** Raymond C. Gadd [illegible]
**To:** [illegible]
**Cc:**
**Bcc:**
**Importance:** Normal
**Subject:** FW: Gifted Evaluation request
**Attachments:** [illegible]

In the second paragraph below Mrs. Yuengling alleges the school principal ( she uses word spouse) is alleging the principal allowed teachers to coerce and exploit private relationships with students. This is what I read in a public meeting. If that is alleged it is certainly something Homeland Security should investigate. And, it is imperative that the school district know the truth related to this accusation.

Ray Gadd
Deputy Superintendent
Pasco County Schools
813-215-9648

**From:** Marcy Lynn Hetzler Reddles [illegible]
**Sent:** Tuesday, December 14, 2021 4:46 PM
**To:** Raymond E. Gadd [illegible]
**Subject:** FW: Gifted Evaluation Request

Marcy Hetzler Reddles

**From:** [illegible]
**Reply-To:** [illegible]
**Date:** Monday, October 25, 2021 at 4:41 PM
**To:** Marcy Hetzler Reddles [illegible]
**Cc:** Tim Light [illegible], "Kurt S. Browning" [illegible], Megan Harding [illegible], Colleen Rose Beaudoin [illegible], "Cynthia A. Armstrong" [illegible], Allen Altman [illegible], "Alison G. Crumbley" [illegible]
**Subject:** Re: Gifted Evaluation request

CAUTION: [illegible]

What is being done about Ms. Latonia-Chaney not doing her job? I want a complete investigation into the negligence in following up and delay of lawfully requested resources to my son. Also, being there is a conflict of interest, being you are the spouse of the Principal who I have multiple state investigational complaints on, I am requesting someone other than you or Dr. [illegible] directly or indirectly to oversee my complaint.

Dealing with liar and [illegible] staff is [illegible], to which "Superintendent" Browning [illegible].
I am [illegible] the only person truly looking out for the LGBTQ students. Superintendent Browning and your spouse willfully are exploiting children. [illegible] you think former students are going to talk about what inappropriate things happened, being they will have to say the [illegible] HIV" and gay, or experimenting when they were a student on Pasco Schools? Where are their privacy rights?? [illegible] exploited those VERY students, they [illegible]. Videos of infants strapped to a [illegible] by an adult. Your spouse allowed teachers to promote, exploit, and coerce private relationships with children in "secret" with the LGBTQ ally teacher alone! Gay or straight it doesn't matter, no secrets from the parents and no promoting secret sexual identities with teachers. The District is still on notice. **ANY CHILD** currently exploited or abused by staff. I'm going to make sure everyone involved is charged.

Rebecca Yuengling

-----Original Message-----
From: Marcy Lynn Hetzler-Reddles [illegible]
To: [illegible]
Cc: Timothy Light [illegible]
Sent: Mon, Oct 25, 2021 4:46 pm
Subject: Gifted Evaluation request

Good Afternoon Mrs. Yuengling,

I am in receipt of your email sent to Superintendent Browning today regarding your student at Cypress Creek Middle School. Per your request to have the name

and title of a different qualified employee ASAP to conduct the evaluation, please note Deanna Binkley, School Psychologist, will now be assigned to cover the meeting and any evaluations. Connie [illegible], Compliance Teacher, will be in touch with you in the morning to schedule with you.

Sincerely,
Marcy Hetzler-Reddles
*Assistant Superintendent for Middle Schools*
*District School Board of Pasco County*
813.794.2445
352.524.2445
727.774.2445

CONFIDENTIALITY NOTICE: [illegible]

# EXHIBIT J

Text Message
Mon, Feb 7 at 10:38 AM

Hey Rich, it's Winters. They assigned me to Riba. There are several of your items still in the office. Are you planning on picking that stuff up? Do you want me to put it in those boxes that are in there? No rush as I do not intend to bring in any personal items myself, I just want your things to be secure. Sorry you exited in this manner as well brother.

Well, according to the jail this is temporary. I wasn't told I was in trouble for anything either. Captain said I could leave my stuff...so I'm confused

Ok, the way it was explained to me it was permanent, your stuff is safe with me until you find out for sure. As I said I have no plans to bring anything of mine in anyways.