**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**RICHARD YUENGLING** and **REBECCA YUENGLING,** individually and as parent/guardians of their minor children, **H.Y. and P.Y.,**

**Plaintiffs,**

**v.** **Case No: 8:22-cv-1787-MSS-SPF**

**PASCO COUNTY SCHOOL BOARD, KURT S. BROWNING, RAY GADD, CARIN HETZLER-NETTLES, KELSEY MORRISON, LINDA KROPIK, RACHEL FLOYD, ERIC SELTZER, CHRIS JOYAL, STACEY JENKINS, and PATRICK MARSHELLO,**

**Defendants.**

---

# ORDER

**THIS CAUSE** comes before the Court for consideration of Defendants Browning, Gadd, Hetzler-Nettles, Morrison, Kropik, and Floyd's Motion to Dismiss the Second Amended Complaint,[1] (Dkt. 74), Defendants Stacey Jenkins, Eric Seltzer, Chris Joyal, and Patrick Marshello's Motion to Dismiss,[2] (Dkt. 76), Plaintiffs' consolidated response, (Dkt. 86), and Defendants' replies thereto. (Dkts. 91, 92)

[1] In this Order, the Court refers to Defendants Browning, Gadd, Hetzler-Nettles, and Floyd collectively as the "School District Defendants." The term does not refer to Defendants Morrison and Kropik.

[2] The Court refers to Defendants Jenkins, Seltzer, Joyal and Marshello collectively as the "Sheriff Defendants."

Pursuant to a mandate of the Eleventh Circuit Court of Appeals, this Court considers and resolves the remaining Defendants' assertions that the doctrine of qualified immunity bars Plaintiffs' claims against them. Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court hereby advises that it intends to GRANT the School District Defendants' Motion to Dismiss and the Sheriff Defendants' Motion to Dismiss, subject to the limited opportunity extended to the Plaintiffs to provide contrary binding authority as explained below.

## I. BACKGROUND

The factual background of this case is explained in the Court's Order granting in part and denying in part the Defendants' Motions to Dismiss. (Dkt. 93) The Court does not repeat it here.

As for the procedural background, on September 29, 2023, the Court entered the Order granting in part and denying in part the Defendants' Motions to Dismiss. (Id.) As relevant here, the Court dismissed as moot and/or not ripe Plaintiff P.Y.'s claim for injunctive relief against the School District Defendants and Defendants Morrison Kropik, contained in Count III; dismissed with prejudice Plaintiff H.Y.'s First Amendment compelled speech claim against Defendants Morrison and Kropik, contained in Count V; dismissed with prejudice Mrs. Yuengling's First Amendment retaliation claim against the Sheriff Defendants, contained in Count II; and dismissed without prejudice Mr. Yuengling's procedural due process claim against the Sheriff

Defendants, Count IV. As a result of the Court's ruling, as relevant here,[3] the remaining claims are Mrs. Yuengling's First Amendment retaliation claims against Defendants Browning, Gadd, and Hetzler-Nettles (Count I); Mr. Yuengling's First Amendment retaliation claims against the Sheriff Defendants (Count II); H.Y. and P.Y.'s procedural due process claims against Defendant Browning (Count III); and H.Y.'s First Amendment compelled speech claim against Defendants Hetzler-Nettles and Floyd (Count V).[4] (Id. at 46–47)

In the Order, the Court took the issue of the individual defendants' qualified immunity under advisement. (Id. at 47) The Sheriff Defendants and the School District Defendants appealed. (Dkt. 134 at 3–4)

The Eleventh Circuit ruled that this Court's "deferral of a ruling on qualified immunity" was improper. (Id. at 5) The Eleventh Circuit remanded the case to this Court to rule on the Sheriff Defendants' and the School District Defendants' qualified immunity defenses, which were raised in the Defendants' Motions to Dismiss.

## II. LEGAL STANDARD

### a. Motion to Dismiss Under Rule 12(b)(6)

The threshold for surviving a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a low one. Quality Foods de Centro Am.,

---

[3] The Court does not discuss the claims that remain against the Pasco County School Board.

[4] The conclusion of the Court's Order incorrectly states that H.Y.'s compelled speech claim against Morrison survives, rather than H.Y.'s compelled speech claim against Floyd. (Dkt. 93 at 47) The Court's analysis makes clear, however, that H.Y.'s claim against Morrison is dismissed with prejudice, and H.Y.'s claim against Floyd survives. (Id. at 35–36)

S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 995 (11th Cir. 1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 560–64 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting Twombly, 550 U.S. at 545). In considering a motion to dismiss and evaluating the sufficiency of a complaint, a court must accept the well-pleaded facts as true and construe them in the light most favorable to the plaintiff. Quality Foods, 711 F.2d at 994–95. However, the court should not assume that the plaintiff can prove facts that were not alleged. Id.

**b. Qualified Immunity**

"State officials enjoy qualified immunity from complaints for damages under section 1983 when they act within their discretionary authority and do not violate any clearly established federal right." Smart v. England, 93 F.4th 1283, 1287–88 (11th Cir. 2024) (citations omitted). An official who proves he acted within his discretionary authority is entitled to qualified immunity unless (1) he violated a federal statutory or constitutional right, and (2) the unlawfulness of his conduct was clearly established at the time. Id. at 1288 (citations omitted).

"The term 'discretionary authority' covers 'all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Hinson v. Bias, 927 F.3d 1103, 1116 (11th Cir. 2019) (quoting Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994)). Courts should consider "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Tisdale v. Gravitt, 51 F. Supp. 3d 1378, 1390–91 (N.D. Ga. 2014) (quoting Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004)). To determine whether an act was committed within an official's discretionary authority, courts "temporarily [put] aside that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." Id. at 1391 (quoting Holloman, 370 F.3d at 1265).

"'Clearly established law' is law that is sufficiently established so as to provide public officials with 'fair notice' that the conduct alleged is prohibited." Randall v. Scott, 610 F.3d 701, 715 (11th Cir. 2010) (citing Hope v. Pelzer, 536 U.S. 730, 739 (2002)). "To defeat a defendant's claim to qualified immunity, a plaintiff must show that a reasonable person in the defendant's position would have been on notice that his actions violated clearly-established law." Maggio v. Sipple, 211 F.3d 1346, 1354 (11th Cir. 2000) (citations omitted). The plaintiff's allegations must show it would be "obvious to all reasonable government actors, in the defendant's place, that 'what he

is doing' violates federal law." Id. (quoting Lassiter v. Ala. A&M Univ. Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994)).

A plaintiff can show that a right is clearly established in several ways. First, broad statements that certain conduct is unconstitutional "'can be read as having clearly established a constitutional principle.'" Id. (quoting Vinyard v.Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002)); Terrell v. Smith, 668 F.3d 1244, 1255 (11th Cir. 2012) (quoting Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005)) (noting clearly established law may be demonstrated if "the plaintiffs can point to a 'broader, clearly established principle [that] should control the novel facts [of the] situation'"). Second, a case with materially similar facts can clearly establish the law. Randall, 610 F.3d at 715 (citations omitted). Finally, a plaintiff can show that his or her case involves conduct that "so obviously violates [the] [C]onstitution that prior case law is unnecessary." Id. at 715–16 (quoting Mercado, 407 F.3d at 1159).

The Eleventh Circuit no longer imposes a heightened pleading requirement in § 1983 cases against defendants in their individual capacities. Id. at 710 (citing Ashcroft v. Iqbal, 556 U.S. 662 (2009)) ("After Iqbal it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints."). Thus, "a short and plain statement of the claim showing that the pleader is entitled to relief" is sufficient even in cases where a defendant may assert qualified immunity. Fed. R. Civ. P. 8(a)(2).

## III. DISCUSSION

The Court will discuss whether the qualified immunity defense precludes the remaining claims against each individual defendant in turn.

### a. Mrs. Yuengling's First Amendment Retaliation Claims against Defendants Browning, Gadd, and Hetzler-Nettles (Count I)

Defendants Browning, Gadd, and Hetzler-Nettles are entitled to qualified immunity because the unlawfulness of their alleged conduct was not clearly established at the time it took place.

The Court finds Browning, Gadd, and Hetzler-Nettles acted within the scope of their discretionary authority when they took the alleged retaliatory actions against Mrs. Yuengling. Notably, Plaintiffs do not argue to the contrary. (Dkt. 86 at 23–25) Accordingly, the issue of these defendants' qualified immunity turns on whether Plaintiffs allege the Defendants violated clearly established law.

To plead a First Amendment retaliation claim, a plaintiff must allege she engaged in constitutionally protected speech, the defendant engaged in retaliatory conduct that adversely affected the protected speech, and a causal connection between the retaliatory conduct and the adverse effect on the speech exists. Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005). The Court has already ruled that Plaintiffs adequately pled the first two elements of Mrs. Yuengling's First Amendment retaliation claim against Gadd, Browning, and Hetzler-Nettles. (Dkt. 93 at 23–29) The Court finds that Plaintiffs also adequately pled the third element of her claim against each of these defendants.

As for Gadd, Plaintiffs allege he read an email Mrs. Yuengling sent to the Deputy Superintendent for Middle Schools aloud at a School Board meeting. (Dkt. 71 at ¶ 42) Plaintiffs allege Gadd did so in an attempt to shame and embarrass Mrs. Yuengling. (Id.) When he finished reading the email, Gadd allegedly characterized Mrs. Yuengling's email as "abusive" and stated he would not "'continue to allow' it anymore." (Id. at ¶ 44) Later, Gadd forwarded another email by Mrs. Yuengling to the Chief Deputy of the Pasco County Sherriff's Department. (Id. at ¶ 46) Gadd allegedly requested that the Sherriff's Department investigate Mrs. Yuengling. (Id.) Finally, Plaintiffs allege Gadd participated in a meeting with Browning and Hetzler-Nettles that took place ten days prior to H.Y.'s reassignment from Cypress Creek High School. (Id. at ¶ 59) Plaintiffs allege that the purpose of the meeting was to develop a record to justify H.Y.'s expulsion. (Id.)

Plaintiffs assert that the following alleged acts by Gadd constituted retaliation for protected speech: Gadd's attempt to humiliate Mrs. Yuengling at the school board meeting; Gadd's attempt to have Mrs. Yuengling criminally investigated; Gadd's pursuit of and assistance in furtherance of H.Y.'s reassignment from Cypress Creek High School; and Gadd's pursuit of and assistance in furtherance of P.Y.'s ban from Cypress Creek High School. (Id. at ¶ 116)

Gadd's alleged retaliatory animus, which he publicly expressed at the School Board meeting, and which allegedly motivated his meeting with Browning and Hetzler-Nettles about the Yuenglings, caused Mrs. Yuengling's injury—the chilling of her speech after the removal of H.Y. and the banning of P.Y. from their zoned high

school. Cf. Turner v. Williams, 65 F.4th 564, 581 (11th Cir. 2023) (noting the retaliatory motive must cause the injury). Thus, Plaintiffs plausibly allege Gadd violated Mrs. Yuengling's First Amendment right against retaliation.

As for Browning, Plaintiffs allege he made the decision to transfer H.Y. to Sun Lake High School. (Dkt. 71 at ¶ 52) Browning's decision was made pursuant to his "exclusive authority" under School Board Policy 5120. (Id. at ¶ 54) Plaintiffs also allege Browning denied H.Y. meaningful review of her removal. (Id. at ¶ 61) Plaintiffs allege Browning took these actions to retaliate against Mrs. Yuengling. (Id. at ¶ 117)

The Court finds Plaintiffs adequately allege Browning violated a constitutional right. As with Defendant Gadd, the Court already ruled that Plaintiffs adequately pled the first two elements of a claim of First Amendment retaliation against Browning. (Dkt. 93 at 23–29) The Court finds that Plaintiffs also adequately pled the third element. In Browning's letter to Mrs. Yuengling that informed her of his decision to reassign H.Y., he states,

> Your voluminous emails (in excess of 500 pages), phone calls, public statements and posts on social media are not only harassing in nature to administration and staff, but also disruptive to the learning environment for our students. . . . Therefore, . . . your child, [H.Y.], is reassigned to Sunlake High School . . . . Your son, [P.Y.], will be permitted to remain at Cypress Creek Middle School through 8th Grade. Upon entering 9th Grade, he will be reassigned to Sunlake High School, as well.

(Dkt. 71, Ex. A) Browning *expressly* tied his unfortunate decision to remove H.Y. and P.Y. from Cypress Creek High School to Mrs. Yuengling's speech. As the Court previously noted, Browning's letter "stated that all forms of Ms. Yuengling's speech

precipitated the removal decision." (Dkt. 93 at 26–27) Thus, Browning's alleged retaliation caused Mrs. Yuengling's alleged injury—the chilling of her speech after the removal of her children from their zoned high school. Plaintiffs plausibly allege Browning violated Mrs. Yuengling's First Amendment right against retaliation.

As for Hetzler-Nettles, Plaintiffs allege she worked together with Gadd and Browning to retaliate against Mrs. Yuengling for her speech. (Dkt. 71 at ¶ 114) Plaintiffs allege Hetzler-Nettles submitted a public record request for all communications Mrs. Yuengling had with the School District shortly before the meeting during which Plaintiffs allege Gadd, Browning, and Hetzler-Nettles decided to reassign H.Y. from her high school. (Id. at ¶ 59) Plaintiffs also allege Hetzler-Nettles had H.Y. "paraded" to "a conspicuous place outside of the school gates" for Mrs. Yuengling to pick her up when H.Y. attempted to attend school at Cypress Creek following her reassignment. (Id. at ¶¶ 64, 115)

As with Gadd and Browning, the Court already ruled that Plaintiffs adequately pled the first two elements of a claim of First Amendment retaliation against Hetzler-Nettles. (Dkt. 93 at 23–29) The Court finds that Plaintiffs also adequately pled the causal connection element. Plaintiffs allege Hetzler-Nettles participated in and facilitated H.Y.'s removal from Cypress Creek High School by developing a record of Mrs. Yuengling's communications with the School District. Plaintiffs also allege Hetzler-Nettles's retaliatory animus motivated her to humiliate H.Y. when H.Y. attempted to attend Cypress Creek after her reassignment. This alleged conduct resulted in the alleged adverse effect on Plaintiff's speech; Mrs. Yuengling reasonably

would be deterred from engaging in protected speech after her daughter was removed from her school and embarrassed in front of her peers. Thus, the Court finds Plaintiffs sufficiently allege that Hetzler-Nettles committed a constitutional violation.

Based on the foregoing, the Court finds that Plaintiffs have adequately alleged that each Defendant violated a constitutional right. That conclusion, however, does not end the inquiry. Defendants are entitled to qualified immunity only if Plaintiffs can show that the alleged conduct violated clearly established law at the time it occurred. Holloman, 370 F.3d at 1264; see also Bivins v. Franklin, No. 23-13029, 2025 WL 3528707, at *2 (11th Cir. Dec. 9, 2025).[5] To overcome qualified immunity, a plaintiff must satisfy a two-pronged test by showing: "(1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged violation." Holloman, 370 F.3d at 1264. Plaintiffs bear the burden of demonstrating that qualified immunity does not apply. Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003).

For a right to be clearly established, existing law must have been developed "in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1285 (11th Cir. 2000) (quoting Lassiter v. Ala. A&M Univ. Bd. of Trs., 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc)).

[5] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it is persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000). Where cited herein, any unreported decision of a panel of the Circuit is considered well-reasoned and is offered as persuasive, not binding.

The Supreme Court has emphasized that while a case directly on point is not required, "the unlawfulness must be apparent" in light of pre-existing law. Hope, 536 U.S. at 739.

The Eleventh Circuit recognizes three methods by which a plaintiff may show that the law was clearly established:

> (1) materially similar precedent establishing the constitutional right;
>
> (2) a broad statement of principle that applies with "obvious clarity" to the conduct at issue; or
>
> (3) conduct so egregious that it violates the Constitution notwithstanding the absence of case law.

Lewis v. City of W. Palm Beach, Fla., 561 F.3d 1288, 1291–92 (11th Cir. 2009).

The first category requires a high degree of factual specificity, and only decisions of the Supreme Court, the Eleventh Circuit, or the relevant state supreme court may clearly establish the law in this Circuit. City of Escondido v. Emmons, 586 U.S. 38 (2019); Thomas ex rel. Thomas v. Roberts, 323 F.3d 950, 955 (11th Cir. 2003). For this category, "if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." Corbitt v. Vickers, 929 F.3d 1304, 1312 (11th Cir. 2019). In the context of First Amendment retaliation cases, because they often "do not lend themselves to clear bright-lines, the government official will usually be entitled to qualified immunity in this context." Bivins, 2025 WL 3528707, at *3 (quoting Maggio v. Sipple, 211 F.3d 1346, 1354 (11th Cir. 2000)). Plaintiffs have

not pointed the Court to any such bright line authority, and the Court has not found any such analogous case.

The second and third categories require "obvious clarity"—that is, conduct so plainly unconstitutional that every reasonable official would understand the violation at the time it occurred. Terrell v. Smith, 668 F.3d 1244, 1256–57 (11th Cir. 2012). It is true, as a general matter, that the First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech. Bell v. Sheriff of Broward Cnty., 6 F.4th 1374, 1376 (11th Cir. 2021) (quoting Nieves v. Bartlett, 587 U.S. 391, 398 (2019)).

Moreover, although it may seem a matter of common sense that government officials should not involve innocent children in an effort to chill a parent's protected speech, the allegations here do not rise to the "rare" level of obvious clarity recognized by the Eleventh Circuit under either the second or third category. This is especially true here because the Supreme Court has long recognized that local school boards possess broad discretion in managing school affairs. Bd. of Educ. of Island Trees Union Free Sch. Dist. v. Pico, 457 U.S. 853, 863 (1982).

Accordingly, the Court is of the preliminary conclusion that the novel factual circumstances presented do not demonstrate a violation of clearly established law. Therefore, Defendants Gadd, Browning, and Hetzler-Nettles enjoy qualified immunity in this case from responsibility from their unconstitutional conduct.

Nonetheless, the Court will hold this Order in abeyance and grant Plaintiffs **fourteen (14) days** to provide the Court with a materially similar case that satisfies the

Court that the law was clearly established, if such a case exists. The Court does this because Plaintiffs bear the burden to defeat qualified immunity, and Plaintiffs' only argument in the briefing realleged facts from the Complaint and asserted that factual development was needed to meet this burden. (Dkt. 87) As the Parties are aware, the Eleventh Circuit has foreclosed the Court's ability to allow further factual development before ruling on qualified immunity. (Dkt. 134) Thus, if Plaintiffs wish to make the Court aware of a binding case or cases with indistinguishable facts they may do so within the time allotted. If Plaintiffs do not do so, the Court will be compelled to dismiss Count I.

**b. Mr. Yuengling's First Amendment Retaliation Claims Against the Sherriff Defendants (Count II)**

The Sheriff Defendants are entitled to qualified immunity because they acted within the scope of their discretionary authority when they took the actions alleged to be retaliatory and the unlawfulness of their alleged conduct was not clearly established at the time.

The Court finds Seltzer, Jenkins, Joyal, and Marshello acted within the scope of their discretionary authority when they took the alleged retaliatory actions against Mr. Yuengling. Notably, Plaintiffs do not argue to the contrary. (Dkt. 86 at 39–41) The issue of these Defendants' qualified immunity turns on whether Plaintiffs allege the Officers violated clearly established law.

As stated *supra*, to plead a First Amendment retaliation claim, a plaintiff must allege his speech was constitutionally protected, the defendant's retaliatory conduct

adversely affected the protected speech, and a causal connection between the retaliatory conduct and the adverse effect on the speech exists. Bennett, 423 F.3d at 1250; Zen Grp., Inc. v. Agency for Health Care Admin., 80 F.4th 1319, 1329 (11th Cir. 2023). For a government employee's speech to be constitutionally protected, the employee must allege he spoke as a citizen on a matter of public concern. Alves v. Bd. of Regents of the Univ. Sys. of Ga., 804 F.3d 1149, 1160 (11th Cir. 2015). This Court already ruled that Plaintiffs adequately allege Mr. Yuengling's speech was constitutionally protected. (Dkt. 93 at 41) Assuming, *arguendo*, Plaintiffs adequately allege the second two elements of Mr. Yuengling's First Amendment retaliation claims against the Sheriff Defendants, they are nonetheless entitled to qualified immunity. The Court finds it would not have been obvious to a reasonable officer under the alleged circumstances that Mr. Yuengling's speech was constitutionally protected.

For the Court to find the Sheriff Defendants knew or should have known that their alleged conduct was retaliatory under the First Amendment, it must have been clearly established that Mr. Yuengling's speech was protected. Zen Grp., 80 F.4th at 1332. Under well established case law, Plaintiffs adequately allege Mr. Yuengling spoke as a citizen, not in his capacity as a government employee, in each instance of his alleged speech. See Warren v. DeSantis, 90 F.4th 1115, 1131 (11th Cir. 2024). However, Plaintiffs' allegations must also show it was clearly established that Mr. Yuengling's speech involved a matter of public concern. Zen Grp., 80 F.4th at 1329 (noting a government contractor's "speech and petition activities are constitutionally protected only if they relate to a matter of public concern"). If it is unclear whether

Mr. Yuengling's speech involved a matter of public concern, then the Sheriff Defendants' alleged actions did not violate clearly established First Amendment rights. Id. at 1323; Williams v. Ala. State Univ., 102 F.3d 1179, 1183 (11th Cir. 1997) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (holding the defendants were entitled to qualified immunity at the motion-to-dismiss stage because "whether [the plaintiff's] activities involved a matter of public concern is not 'sufficiently clear that a reasonable official would understand that what he is doing violates' the First Amendment"). "Even when the topic of the speech is 'obviously a matter of important social interest,'" the Court must focus on what the officials are alleged to have known or should have known about the facts and the law. Id. (quoting Johnson v. Clifton, 74 F.3d 1087, 1093 (11th Cir. 1996)) (citing Gaines v. Wardynski, 871 F.3d 1203, 1207 (11th Cir. 2017)).

Although Plaintiffs allege Mr. Yuengling engaged in various forms of speech, including sharing his concerns about the School Board with his colleagues and talking with parents of Cypress Creek High School students about H.Y.'s reassignment, the allegations do not establish that the Sheriff Defendants knew about Mr. Yuengling's other forms of speech. Cf. Darlow v. Babineck, No. 21-13020, 2022 WL 15345444, at *3 (11th Cir. Oct. 27, 2022) (affirming the district court's finding that the defendant police chief was not entitled to qualified immunity where the plaintiff alleged in the amended complaint that the police chief saw the social media post that related to a matter of public concern). Instead, the allegations show only that the Sheriff Defendants knew Mr. Yuengling had filed his lawsuit against Browning and the

School Board. And even then, the allegations do not demonstrate that any of the Sheriff Defendants read Mr. Yuengling's complaints filed against Browning. The Court, therefore, must consider what Plaintiffs allege the Sheriff Defendants knew about Mr. Yuengling's lawsuit at the time of their conduct and determine whether, based on that alleged knowledge, a reasonable official would have believed Mr. Yuengling's expression clearly related to a matter of public concern.

Plaintiffs allege Mr. Yuengling's Sheriff's Department colleagues at the West Pasco Judicial Center knew about his involvement in Pasco Watch, the informal organization focused on civic engagement in public education in Pasco County, and his views on the Personal Information Forms. (Dkt. 71 at ¶ 49)

Plaintiffs allege Mr. Yuengling told Captain Seltzer he intended to bring a claim against the School Board and Superintendent Browning. (Id. at ¶ 74) Captain Seltzer allegedly instructed Mr. Yuengling to keep him informed on the matter as it progressed. (Id.)

Plaintiffs allege Mr. Yuengling filed his lawsuit seeking an injunction against H.Y.'s reassignment at the West Pasco Judicial Center while in his uniform. (Id. at ¶ 72) Just after doing so, Mr. Yuengling told his supervisor, Captain Seltzer, that he was preparing to submit his filing to a process server. (Id. at ¶¶ 72–74) In this conversation, Plaintiffs allege Captain Seltzer concurred with a statement by a bystander government attorney that Mr. Yuengling "shouldn't mess with" Browning. (Id. at ¶ 75) Plaintiffs allege Captain Seltzer indicated Mr. Yuengling's lawsuit would reflect poorly on the

Sheriff's Department. (Id.) He allegedly urged Mr. Yuengling to abandon his lawsuit. (Id.)

Then, Plaintiffs allege that on the same day, Captain Seltzer filed an internal affairs complaint against Mr. Yuengling on the grounds that Mr. Yuengling had conducted personal business while in uniform. (Id. at ¶ 77) The next day, Captain Seltzer allegedly advised Mr. Yuengling he would be transferred to jail duty at the Land 'O Lakes Jail indefinitely. (Id. at ¶ 79) Lieutenant Joyal was present at this meeting and indicated his approval of Captain Seltzer's decision. (Id. at ¶¶ 78, 83) Lieutenant Joyal did not substantively respond to Mr. Yuengling's request for an explanation for the reassignment. (Id. at ¶ 83)

Plaintiffs allege Mr. Yuengling's reassignment to the jail was undesirable. (Id. at ¶ 80) Plaintiffs also allege facts that show that his reassignment was pretextual. For example, Mr. Yuengling had allegedly maintained an excellent reputation and employment history. (Id. at ¶ 82) Plaintiffs also allege it was commonplace for Sheriff's Deputies working at the West Pasco Judicial Center to wear their uniforms while conducting personal business, such as while disputing traffic tickets, but that other deputies were not disciplined for doing so. (Id. at ¶ 94)

When Mr. Yuengling began working at the jail, Plaintiffs allege his former colleagues at the Judicial Center indicated to him that they had learned his transfer was permanent. (Id. at ¶ 84). Allegedly fearful that he would lose his job, Mr. Yuengling voluntarily discontinued his lawsuit against the School Board. (Id. at ¶ 85)

Plaintiffs allege that about six weeks after Mr. Yuengling told Captain Seltzer about his lawsuit, Captain Seltzer advised Mr. Yuengling that his transfer to the jail was permanent because of, in Captain Seltzer's words, "what happened." (Id. at ¶¶ 96-97) Captain Seltzer allegedly discouraged Mr. Yuengling from appealing his reassignment to Major Jenkins. (Id. at ¶ 98) Lieutenant Joyal was present for this meeting. (Id. at ¶ 99) He indicated his approval of Captain Seltzer's decision and did not substantively respond to Mr. Yuengling's request for an explanation for the permanent reassignment. (Id.)

Later, Plaintiffs allege Mr. Yuengling received a Letter of Reprimand that stated his transfer to the jail was a sanction for conducting personal business while in uniform. (Dkt. 71, Ex. H) The letter also warned that "any further violations of office policy and procedures may result in more severe discipline, including termination." (Id.)

Plaintiffs allege Major Jenkins, the highest-ranking Defendant-officer, accepted Captain Seltzer's determination that Mr. Yuengling should be permanently transferred to the jail. (Id. at ¶ 100) Major Jenkins allegedly told Mr. Yuengling that his reassignment was ultimately her decision. (Id. at ¶ 101)

While working at the jail, Plaintiffs allege Mr. Yuengling's supervisor was Sergeant Marshello. (Id. at ¶ 87) Plaintiffs allege Sergeant Marshello assigned Mr. Yuengling to an undesirable assignment in the jail every day. (Id. at ¶¶ 87–88, 91) Plaintiffs allege facts that demonstrate that Sergeant Marshello's reasons for assigning Mr. Yuengling to this post were pretextual. (Id. at ¶¶ 89–90)

Days after Mr. Yuengling received the Letter of Reprimand, Plaintiffs allege the Pasco County Sheriff announced that oversight of the jail was transferring from the Sheriff's Department to the County. (Id. at ¶ 106) Plaintiffs allege that upon the transfer of the jail's oversight to the County, all Sheriff's Deputies working at the jail would become corrections officers working for a County agency. (Id.) This consequence of Mr. Yuengling's transfer was allegedly adverse and constituted his constructive termination from the Sheriff's Department. (Id. at ¶¶ 106, 111) Plaintiffs allege Lieutenant Joyal, Captain Seltzer, and Major Jenkins knew oversight of the jail was to be transferred from the Sheriff's Department shortly after Mr. Yuengling's reassignment. (Id. at ¶¶ 107, 111)

Plaintiffs allege Mr. Yuengling resigned because of these circumstances and because he believed he was being retaliated against. (Id. at ¶ 108) Upon Mr. Yuengling's resignation, Plaintiffs allege Major Jenkins had authority to grant Mr. Yuengling's request to keep his gun and badge as a ceremonial benefit, but she denied it. (Id. at ¶¶ 109–10)

Plaintiffs allege the foregoing conduct was retaliation for his and Mrs. Yuengling's protected speech. (Id. at ¶ 111)

The Court understands the right asserted is the right of a sheriff's deputy to file a lawsuit against the School Board and the School District Superintendent free from retaliation in the forms alleged here, *i.e.*, his removal from his current position; his assignment to an undesirable post; his constructive termination; his subjection to an internal investigation for conduct that is common practice among similarly situated

employees; and the denial of a ceremonial benefit of his employment upon his resignation.

Speech relates to a matter of public concern if it relates to a matter of political, social, or other concern to the community. Morgan v. Ford, 6 F.3d 750, 754 (11th Cir. 1993) (quoting Deremo v. Watkins, 939 F.2d 908, 910 (11th Cir. 1991) (citations omitted)). To determine whether speech relates to a matter of public concern, a court must "discern the purpose of the employee's speech—that is, whether she spoke on behalf of the public as a citizen, or whether the employee spoke for herself as an employee." Id. (citations omitted). Even at the motion-to-dismiss stage, a court must consider "the content, form and context of a given statement, as revealed by the whole record." Id. (citations omitted); see Zen Grp., 80 F.4th at 1329. "A court may consider the employee's attempts to make the concerns public, along with 'the employee's motivation in speaking.'" Morgan, 6 F.3d at 754.

The Eleventh Circuit has noted, "[a]n employee's speech will rarely be entirely private or entirely public." Id. at 755. "The mere fact that the subject matter of the expression is one in which the public might have a substantial interest . . . is not dispositive." Lawrenz v. James, 852 F. Supp. 986, 992 (M.D. Fla. 1994). Nor is the consideration of whether the employee attempted to make the expression public dispositive. Morgan, 6 F.3d at 754. The relevant inquiry is whether the purpose of the speech was to raise issues of public concern. Alves, 804 F. 3d at 1167 ("It was only incident to voicing their personal concerns that Appellants' remarks touched upon

matters that might potentially affect the student body."); Boyce v. Andrew, 510 F.3d 1333, 1344 (11th Cir. 2007).

The allegations do not show that a reasonable officer in the Sheriff Defendants' positions should have known that Mr. Yuengling's lawsuit related to a matter of political, social, or other concern to the community. First, the Court considers what the allegations show a reasonable officer would have known about the content of the alleged speech. Plaintiffs do not allege that any of the Sheriff Defendants read the complaint Mr. Yuengling filed or otherwise knew the content of the complaint. At most, the allegations indicate Captain Seltzer knew Mr. Yuengling's lawsuit related to his children's assignment to or experience in their Pasco County public schools. (Dkt. 71 at ¶ 75) ("Captain Seltzer urged Mr. Yuengling to abandon his lawsuit and focus instead on trying to get his kids into a local charter school.") Thus, as alleged, the content of Mr. Yuengling's speech, as far as the Sheriff Defendants were concerned, seemed principally to involve matters of private concern.

Next, the Court considers what the allegations show a reasonable officer would have known about the form of Mr. Yuengling's alleged speech. Mr. Yuengling filed his lawsuit on a public docket. Based on the allegations, a reasonable officer could have believed that Mr. Yuengling's purpose in filing the lawsuit was to raise a matter of public concern, at least in part.

Finally, the Court considers what the allegations show a reasonable officer would have known about the context of Mr. Yuengling's alleged speech. Again, the allegations do not establish that the Sheriff Defendants knew much, if anything, about

the context of Mr. Yuengling's lawsuit. The allegations allow the Court to infer Captain Seltzer knew Mr. Yuengling was dissatisfied with the School Board and Browning, but the allegations do not establish what Captain Seltzer knew about the Yuenglings' opinions on the Personal Information Forms, involvement in Pasco Watch, or attendance and speech at School Board meetings. Thus, the context of Mr. Yuengling's speech offers little insight into what a reasonable officer would have known about whether the speech involved a matter of public concern.

Balancing these factors, the Court finds on the basis of the facts as pleaded a reasonable officer could have believed that Mr. Yuengling's filing of the lawsuit did not involve a matter of public concern. For this reason, on this complaint, it is not clearly established that Mr. Yuengling's expression was constitutionally protected and, thus, that the Sheriff Defendants' alleged conduct would have been clearly unlawful at the time the conduct occurred.

Because Plaintiffs' allegations fail to establish the Sheriff Defendants knew or should have known that their decisions to demote Mr. Yuengling violated a clearly established constitutional right, the Sheriff Defendants are entitled to qualified immunity as to Count II, the only count alleged against them. Thus, Count II of the Second Amended Complaint is due to be **DISMISSED**.

**c. H.Y. and P.Y.'s Procedural Due Process Claims Against Defendant Browning (Count III)**

The Court finds Browning is entitled to qualified immunity as to Count III because Plaintiffs do not allege he violated clearly established law.

Browning was acting within his discretionary authority when he reassigned H.Y. from Cypress Creek High School. Plaintiffs do not argue otherwise. (Dkt. 86 at 23–25) Thus, the issue of Browning's qualified immunity as to Count III turns on whether the unlawfulness of his alleged conduct was clearly established at the time it took place.

To allege a procedural due process violation, a plaintiff must allege a deprivation of a constitutionally protected liberty or property interest, state action, and constitutionally inadequate process. Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994). The Court already ruled that Plaintiffs adequately allege a deprivation of a constitutionally protected property interest here. (Dkt. 93 at 33) Assuming, *arguendo*, Plaintiffs adequately allege the remaining two elements of H.Y. and P.Y.'s procedural due process claims,[6] Browning is nonetheless entitled to qualified immunity because his alleged decision to reassign the students' schools does not violate clearly established law.

The Court understands the right asserted is the right of a student to procedural protections, such as a hearing or a right of appeal, when the student is reassigned from one high school in her district to another. "Florida's constitution and statutory law creates a right to a public education, and federal law treats that right as a property or liberty interest protected by the due process clause of the Fourteenth Amendment."

[6] First, the state action element is plainly satisfied. Browning, the School Board Superintendent, reassigned H.Y. and P.Y. to a different high school pursuant to his powers as Superintendent. Second, the Court finds the process, or lack thereof, Plaintiffs allege was provided to H.Y. and P.Y. regarding their reassignment was constitutionally inadequate.

Anderson v. Hillsborough Cnty. School Bd., 390 F. App'x 902, 903 (11th Cir. 2010). The United States Supreme Court has recognized that public school students are entitled to notice and a hearing before being suspended from school for disciplinary reasons. Goss v. Lopez, 419 U.S. 565, 581 (1975); see also id. at 584 (noting "[l]onger suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures"). However, "Florida law does not . . . create a right to attend a high school of your choice, and this court has never decided that a Florida student has a property or liberty interest in attending a particular high school." Anderson, 390 F. App'x at 903. "And, we doubt that the transfer of a student to an alternative school deprives a Florida student of an interest that is cognizable under the Fourteenth Amendment." Id.

Based on the foregoing, the Court cannot find that Browning's alleged decision to reassign H.Y. and P.Y. without providing them a hearing or a right of appeal, even if unfair or heavy-handed, violated clearly established law. Thus, Browning is entitled to qualified immunity as to Count III, and Count III is due to be **DISMISSED**.

**d. H.Y.'s First Amendment Compelled Speech Claim Against Defendants Hetzler-Nettles and Floyd (Count V)**

The Court finds Hetzler-Nettles and Floyd are entitled to qualified immunity as to Count V because their alleged conduct did not violate clearly established law.

The Court finds Hetzler-Nettles and Floyd acted within the scope of their discretionary authority when they allegedly compelled H.Y.'s speech via the Personal Information Forms. Plaintiffs do not argue to the contrary. (Dkt. 86 at 23–25) The

issue of these Defendants' qualified immunity turns on whether their alleged conduct was clearly unlawful.

As stated in the Court's Order granting in part and denying in part the Defendants' Motions to Dismiss, Plaintiffs adequately allege facts to support H.Y.'s compelled speech claim against Hetzler-Nettles and Floyd. Specifically, Plaintiffs allege Floyd issued the Personal Information Form, as a mandatory, graded quiz, and non-compliance with the exercise would place H.Y. at risk of receiving a failing grade. Plaintiffs allege Hetzler-Nettles ratified Floyd's conduct. The risk of receiving a failing grade for non-compliance was a regulatory and pecuniary disincentive to refuse to complete the form. See Holloman, 370 F.3d at 1268. Thus, the Court finds Plaintiffs plausibly allege a claim that Hetzler-Nettles and Floyd violated H.Y.'s First Amendment right to be free from compelled speech.

Hetzler-Nettles and Floyd are nonetheless entitled to qualified immunity if the law prohibiting their alleged conduct was not clearly established at the time the conduct took place. The Court understands the challenged raised by this Count is related to the right of a student to refuse to complete a form that asks her to identify her gender identity, preferred pronouns, and whether she wants her answers kept private from her parents, especially where the exercise of that right is disincentivized by the risk of incurring a failing grade on a quiz. The Court is unaware of a case with facts materially similar to those alleged here, and the Court is not persuaded that the alleged conduct so obviously violates the Constitution that prior case law is unnecessary.

The Court considers broad, clearly established principles about students' right to be free from compelled speech and finds they do not neatly apply to the alleged circumstances. Students' right to refuse to say the Pledge of Allegiance is clearly established. Holloman, 370 F.3d at 1269. But this principle does not necessarily guide the determination of H.Y.'s rights here because Floyd's assignment of the Personal Information Forms did not require her to express a particular viewpoint. Rather, Floyd's assignment required H.Y. to state how she identifies, what her preferred pronouns are and whether she consented to her answers being shared with her parents. Floyd did not compel H.Y. to express or state any specific viewpoint. See Parents Defending Education v. Olentangy Local School Dist., 109 F4th 453, 459, 466 (6th Cir. 2024) (discussing parents' challenge to school district's policy requiring that students not "purposefully [refer] to another student by using gendered language they know is contrary to the other student's identity," noting the evidence in the record showed that the parents' "children intend to communicate a message by using non-preferred pronouns to refer to their classmates").

To be sure,"First Amendment concerns may even be present when the state compels speech in a content-neutral manner." Full Value Advisors, LLC v. S.E.C., 633 F.3d 1101, 1108 (D.C. Cir. 2011) (citing C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 188 (3d Cir. 2005)). And, one could argue that completing the form in any way would suggest a viewpoint that there is an option as to how one should be referred in any way other than as to their gender assigned at birth. However, these are novel issues, certainly they were at the time in question, and the Court is aware of no clearly

established, broad principle that supports finding that Hetzler-Nettles or Floyd knew or should have known that requiring H.Y. to complete a Personal Information Form would compel speech in violation of the First Amendment.

Based on the foregoing, the Court finds Hetzler-Nettles and Floyd are entitled to qualified immunity as to Count V. Thus, Count V is due to be **DISMISSED**.

**IV. CONCLUSION**

Accordingly, it is hereby **ORDERED**:

1. Defendants Browning, Gadd, Hetzler-Nettles, Morrison, Kropik, and Floyd's Motion to Dismiss the Second Amended Complaint, (Dkt. 74), is **GRANTED**.
2. Defendants Stacey Jenkins, Eric Seltzer, Chris Joyal, and Patrick Marshello's Motion to Dismiss, (Dkt. 76), is **GRANTED**.
3. Counts I, II, III, and V are **DISMISSED on the basis of the Defendants' qualified immunity**.
    a. As to Count I, if Plaintiffs wish to present factually analogous cases or compelling authority that was not considered by this Court to support a violation of a clearly established law, they may do so **WITHIN FOURTEEN (14) DAYS** of the date that this Order.
    b. **THE DISMISSALS ARE HELD IN ABEYANCE FOR FOURTEEN DAYS TO ALLOW PLAINTIFFS TO PRESENT**

**A FACTUALLY ANALOGOUS AUTHORITY IF ANY EXISTS. No further briefing is permitted. Plaintiffs shall simply file the citation(s) for the claimed legal authority, if any.** If Plaintiffs do not do so, the Order and Judgment will issue as set forth herein**.**

**DONE** and **ORDERED** in Tampa, Florida, this 27th day of February 2026.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person